## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

PARALLEL NETWORKS LLC,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　C.A. No. 11-822 ER
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
BACKSTAGE WEB, INC. et al.,　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

_____

## DEFENDANT BROOKS SPORTS, INC.'S OPENING BRIEF IN SUPPORT OF
## MOTION TO DISMISS OR, ALTERNATIVELY, TO SEVER AND TRANSFER


Dated:　November 18, 2011

Kenneth L. Dorsney (# 3726)
Richard K. Herrmann (# 405)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
rherrmann@morrisjames.com

*Attorneys for Defendant Brooks Sports, Inc.*

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND ................................................................................. 1

II. APPLICABLE LEGAL STANDARDS ................................................................ 3

    a. First-to-File Rule .......................................................................................... 3

    b. Transfer under 28 U.S.C. § 1404 and First-to-file Rule ............................ 4

III. ARGUMENT ...................................................................................................... 5

    a. First to File Rule Warrants Dismissal of Plaintiff's Claims against
       Brooks Sports ............................................................................................... 5

    b. Alternatively, the Court Should Transfer Plaintiff's Claims against
       Brooks Sports to the Eastern District of Texas under 28 U.S.C. §
       1404(a) For the Convenience of the Parties and in the Interests of
       Justice ........................................................................................................... 8

    c. Plaintiff's Obvious Forum Shopping Warrants Dismissal or Transfer
       of Brooks Sports ...................................................................................... 13

IV. CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Adams Respiratory Therapeutics, Inc. v. Pharm. Holdings Corp.*, No. 06-4418,
  Doc. No. 31, Order Denying Pl.'s Mot. Stay (E.D. Pa. Nov. 2, 2006) ............................ 14

*Continental Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960) ..................................................................................... 5

*E.E.O.C. v. Univ. of PA.*,
  850 F.2d 969 (3d Cir. 1988) ........................................................................ 3

*Electronics for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) .................................................................... 4

*Genentech, Inc. v. Eli Lilly Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ............................................................. 3, 4, 13

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
  No. 11-082, 2011 WL 2911797 (D. Del. July 18, 2011) ............................... 5, 9

*In re Volkswagen of America, Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) ............................................................... 5, 12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir.1995) ................................................................... 4, 5, 9

*Mallinckrodt Inc. v. E–Z–Em, Inc.*,
  670 F. Supp. 2d 349 (D. Del. 2009) ................................................................ 5

*Pfizer, Inc. v. Apotex, Inc.*, No. 08-cv-00948,
  2009 WL 2843288 (D. Del. Aug. 13, 2009) .................................................. 14

*Praxair, Inc. v. ATMI, Inc.*,
  2004 WL 883395 (D. Del. Apr. 20, 2004) ...................................................... 5

*Schering Corp. v. Amgen Inc.*,
  969 F.Supp. 258 (D.Del. 1997) ..................................................................... 4

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
  543 F. Supp. 2d 404 (E.D. Penn. 2008) .......................................................... 7

*Shutte v. Armco Steel Corporation*,
  431 F.2d 22 (3d Cir. 1970) .......................................................................... 10

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
  520 F. Supp. 2d 579 (D. Del. 2007) ...................................................... 3, 4, 6, 7

*Truth Hardware Corp. v. Ashland Prods., Inc.,*
  No. 02-1541 GMS, 2003 WL 118005 (D. Del. Jan.13, 2003) ........................................... 4

*Tuff Toro Corp. v. Hydro-Gear LP et al.,*
882 F.Supp. 359, 363 (D.Del. 1994) ............................................................................... 11

*Vygon v. Rymed Technologies, Inc., No. 08-172,*
*2009 WL 856469 (D. Del. March 31, 2009)* .......................................................... 3, 13

## Statutes

28 U.S.C. § 1404(a) ................................................................................................... passim

## Other Authorities

Fed. R. Civ. P. 21 ............................................................................................................ 8

Defendant Brooks Sports, Inc. (hereinafter, "Brooks Sports") hereby submits this brief in support of its Motion to Dismiss or, Alternatively, to Sever and Transfer Plaintiff Parallel Networks LLC's (hereinafter, "Plaintiff" or "Parallel") claims for patent infringement according to the "first to file" rule and pursuant to 28 U.S.C. § 1404(a) in favor of the first filed action in the Eastern District of Texas in the interests of justice and for the convenience of the parties.

## I.  FACTUAL BACKGROUND

In early 2010, Plaintiff filed four separate patent infringement lawsuits in the Eastern District of Texas alleging that websites owned and/or operated by over 100 internet retailers and advertisers infringed U.S. Patent No. 6,446,111 ("the '111 patent"), the same and only patent in issue in the present case.  The Texas Court consolidated those cases and requested suggestions from the parties on the most efficient means for resolving the dispute.[1]  The defendants in Texas informed the Court that claim construction on three specific terms could be case dispositive for nearly all of the defendants involved and thus requested an early, limited Markman hearing to construe the terms as well as early summary judgment based on those terms.  An early Markman hearing was held in conjunction with the parties' summary judgment briefings relating thereto.

On August 12, 2011, the Eastern District of Texas issued its early Markman and Summary Judgment Opinion and Order construing certain terms and granting summary judgment of non-infringement based thereon for the vast majority of the defendants.  *See* Exh. A. Plaintiff then filed a Motion to Amend the Court's Summary Judgment Order, informing the Court that it was serving amended infringement contentions against certain of the defendants'

---

[1] *See* Exh. A (attached hereto) Order from E.D. Tx. Case No. 6:10-cv-00111, D.I. 566 at pp. 1-2 ("Memorandum Opinion and Order" on claim construction and summary judgment).  This document is publicly available through Pacer and has been attached hereto only for convenience.

websites that Plaintiff acknowledged were beneficiaries of the summary judgment order.[2] Among those websites is www.brooksrunning.com, which Plaintiff therefore continues to pursue against Brooks Sports' corporate parent, Russell Brands, LLC in the Texas case.[3]

Within a week after filing with the Texas Court those new contentions directed to www.brooksrunning.com, Plaintiff filed the instant lawsuit in Delaware against Brooks Sports, specifically alleging infringement of the same '111 patent by the same www.brooksrunning.com site that it strives to maintain in Texas against Brooks Sports' parent.  In fact, the language asserting infringement against Brooks Sports in this case is almost identical to the allegations of infringement found in Plaintiff's Complaint in the Eastern District of Texas case against Brooks Sports' parent.  (*See e.g.* Compl., D.I.1, at ¶¶ 39-41; *see also* Exh. D (E.D. Tx. Case No. 6:10-cv-00491, Compl., D.I.1 at ¶¶ 279-282).  Both the Texas action and the instant action thus involve the **same patent**, the **same technology**, the **same facts**, and, surprisingly, even **the same accused instrumentality**.  In sum, Plaintiff has effectively filed the same lawsuit for patent infringement in two wholly separate forums.

Accordingly, for the avoidance of duplicative litigation and wasted economic expense, Brooks Sports, Inc. respectfully requests the Court dismiss Plaintiff's claims here in favor of the first-filed action in the Eastern District of Texas, or alternatively, to sever and transfer Plaintiff's

---

[2] *See* Exh. B (attached hereto), which includes excerpts from Parallel Networks' Motion to Alter or Amend Summary Judgment Order, specifically requesting additional relief for leave to amend infringement contentions. This document is publicly available through Pacer and has been attached hereto only for convenience.

[3] *See* Exh. C (attached hereto), which includes excerpts from Exhibits 2 and 63 to Parallel Networks' Motion to Alter or Amend Summary Judgment Order, identifying www.brooksrunning.com as a website granted summary judgment for which Plaintiff is *amending* its infringement contentions.  These documents are publicly available through Pacer and have been attached hereto only for convenience.

claims against Brooks Sports in light of Plaintiff's first-filed action in the Eastern District of Texas.

## II.  APPLICABLE LEGAL STANDARDS

### a.  First-to-File Rule

The "first-filed" rule provides that "[i]n all cases of federal competent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of PA.,* 850 F.2d 969, 970 (3d Cir. 1988) (internal quotation omitted) (noting that "[t]he rule gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court").  Thus, "[w]here two lawsuits involving the same claims are filed in different jurisdictions, the first-filed action is given preference.  The first-filed rule reduces multiple conflicting decisions which may require separate appeals, and ensures that litigants receive a single determination of their controversy." *Time Warner Cable, Inc. v. USA Video Tech. Corp.,* 520 F. Supp. 2d 579, 585, 588 (D. Del. 2007) (holding that "the rule helps to avoid the waste involved in duplicative suits, and the delay in providing prompt administrative justice") (internal citations omitted); *see also Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993) (First-to-file rule "raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits.").

In the Third Circuit, "[t]he first-to-file rule gives courts the power to dismiss subsequent claims involving the same parties and the same issues already before another court." *Time Warner Cable, Inc.,* 520 F. Supp. 2d at 588; *see also Vygon v. Rymed Technologies, Inc.,* No. 08-172, 2009 WL 856469, *2 (D.Del. March 31, 2009)  (holding that dismissal of the second filed action was appropriate under the first-to-file rule).

3

The rule applies even to cases in which the parties are not identical, so long as the subject matter is the same. "The Third Circuit applies the first-filed rule to litigation that involves the same subject matter, not necessarily the same parties." *Time Warner Cable, Inc.,* 520 F. Supp. 2d at 585 (noting that "[t]his court has held that the first-filed action is determined by 'which court first obtains possession of the subject of the dispute, not the parties of the dispute'") (quoting *Schering Corp. v. Amgen Inc.,* 969 F.Supp. 258, 267 (D.Del. 1997)).

In patent cases, the Federal Circuit similarly applies "the general rule favoring the forum of the first-filed case, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise.'" *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005) (quoting *Genentech, Inc. v. Eli Lilly Co.,* 998 F.2d 931, 938 (Fed. Cir. 1993)).

### b.  Transfer under 28 U.S.C. § 1404 and First-to-file Rule

Under 28 U.S.C. § 1404(a), a court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought."  It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Truth Hardware Corp. v. Ashland Prods., Inc.,* No. 02-1541 GMS, 2003 WL 118005, at *1 (D. Del. Jan.13, 2003) (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)).

When considering a motion to transfer, a court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879.  In making such a determination, courts perform a "multi-factor balancing test" that weighs certain private and public interests.  For example, private interests include such factors as: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the

convenience of the expected witnesses; and (6) the location of books and records.  *Id.* at 879. Public interests factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the public policies of the fora." *Id.* at 879-80.

"A motion to transfer may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties." *Human Genome Sciences, Inc. v. Genentech, Inc.,* No. 11-082, 2011 WL 2911797 at *3 (D. Del. July 18, 2011) (citing *Praxair, Inc. v. ATMI, Inc.,* 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004)); *see also Mallinckrodt Inc. v. E–Z–Em, Inc.,* 670 F. Supp. 2d 349, 357–58 (D. Del. 2009) ("In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice.").  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *In re Volkswagen of America, Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (citing *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960)); *see also id.* (holding that "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice").

### III. ARGUMENT

#### a. First to File Rule Warrants Dismissal of Plaintiff's Claims against Brooks Sports

Pursuant to the "first to file" rule, Plaintiff's claims against Brooks should be dismissed in light of Plaintiff's substantially identical litigation in the Eastern District of Texas.  The Texas

case is the first-filed action because the Eastern District of Texas first obtained the subject matter in dispute prior to Plaintiff's filing of the instant lawsuit. *See Time Warner Cable, Inc.,* 520 F. Supp. 2d at 586. Specifically, Plaintiff first sued over 100 internet retail companies and advertisers in the Eastern District of Texas alleging that each company's or advertiser's website infringed the same patent Plaintiff asserts here in the District of Delaware (the '111 patent) also against various internet retailers and advertisers. *See* Compl., D.I. 1 at ¶¶ 25-27. In fact, as mentioned before, Plaintiff's allegations of infringement against Brooks (*see* Compl., D.I. 1 at ¶ 39) are a mirror image of the allegations asserted in the Texas Complaint. *See e.g.* Exh. D at ¶¶ 275, 279, 283. Put plainly, both suits concern the alleged infringement of the '111 patent by internet retailers and advertisers via websites and thus both suits share the same facts/technology and deal with the same "allegedly infringing products." *See Time Warner Cable, Inc.,* 520 F. Supp. 2d at 586. The Texas litigation is thus the first-filed action, and Plaintiff's claims against Brooks should thus be dismissed.

Significantly, the Texas case not only involves the same general subject matter, but in fact involves the *same* website. As Plaintiff admits in its Complaint, Plaintiff itself identified the website www.brooksrunning.com as a particular accused instrumentality in the Texas case as early as January 24, 2011 when it served its infringement contentions. (*See* D.I. 1 at ¶ 40). Plaintiff's tactical decision to assert its allegations regarding that website against different parties between the two cases (i.e., against Brooks Sports in Delaware, but against its parent, Russell Brands, in Texas) is of no consequence to the determination of the instant Motion.[4] For purposes

_____

[4] Plaintiff has been on notice since at least as early as the Answer in the Texas case that Russell Brands is not the proper party in interest with respect to the brooksrunning.com site, but to date has chosen not to address that fact with the Texas Court. *See e.g.* Exh. E (attached hereto) (Excerpt from Russell Brands, Inc.'s Answer to Compl. from E.D. Tx. Case No. 6:10-cv-00111, D.I. 390) at ¶ 22 ("There is no basis for Plaintiff to attempt to impose liability on Russell based

of the first-filed analysis, the Texas case is still considered the first action, even if the parties in that case are not identical. *See e.g. Shire U.S., Inc. v. Johnson Matthey, Inc.,* 543 F. Supp. 2d 404, 409 (E.D. Penn. 2008) (citing *Time Warner Cable, Inc.,* 520 F. Supp. 2d at 586 and holding that "[t]he 'subject matter' requirement of the first-to-file rule is satisfied in patent infringement matters where the actions in question involve the same patent and the same allegedly infringing product, *though not necessarily the same parties*") (emphasis added).

This is especially true considering the fact that Plaintiff has repeatedly and, in fact, *continues* to assert infringement against www.brooksrunning.com in the Eastern District of Texas case. Indeed, just days before filing its case in this Court, Plaintiff served purported *amended* infringement contentions against www.brooksrunning.com in Texas, once again asserting that the website infringes the '111 patent. *See* Exhs. B-C. Plaintiff must not be permitted to proceed with identical, duplicative actions against the same www.brooksrunning.com website in two separate Federal District Courts.

Litigation of the alleged infringement of the asserted '111 patent is moving forward in the Eastern District of Texas, but has yet to begin in the District of Delaware. With discovery on-going and partial claim construction complete in Texas, "judicial and litigant resources are being expended in the Eastern District of Texas in a suit involving the same patent, facts, and technology as this suit. Thus, it would create economic waste to duplicate this litigation in the District of Delaware" for Brooks Sports and its accused website. *Time Warner Cable, Inc.,* 520 F. Supp. 2d at 588.

Notably, barely a month before the Plaintiff chose to file this new case in Delaware as a new forum, the Texas Court made clear that it was managing that currently pending prior case

on the actions of Brooks Sports, Inc. or any other entity or person."). This document is publicly available through Pacer and has been attached hereto only for convenience.

with an eye toward maintaining the efficiencies that a proceeding in this forum would thwart: "By all Defendants remaining in one case in one District, the Court was able to resolve the controversy in the most judicially economic manner sparing many other courts from repetitive work, and at the same time saving the parties very significant sums of money in attorneys fees." *See* Exh. A (S.J. Order from E.D. Tx. Case No. 6:10-cv-00111, D.I. 566) at p. 17.[5]

Lastly, the situation at hand does not fall within any exception to the first-filed rule. For instance, it would not be unjust or inefficient to dismiss Plaintiff's claims against Brooks Sports here in favor of the first filed action in Texas. Since Plaintiff was the party to file *both* cases, it will suffer no prejudice by dismissal since it has had the opportunity to pursue its allegations in its first-filed forum as originally contemplated. Because that Texas case is ongoing, dismissal would actually promote efficiency, while pursuit of this new case would have the opposite effect. Accordingly, pursuant to the first-filed rule, Plaintiff's instant claims should be dismissed.

### b. Alternatively, the Court Should Transfer Plaintiff's Claims against Brooks Sports to the Eastern District of Texas under 28 U.S.C. § 1404(a) For the Convenience of the Parties and in the Interests of Justice

In the event the Court is not inclined to dismiss Plaintiff's claims against Brooks Sports, the Court should sever Plaintiff's claims against Brooks Sports and transfer them to the Eastern District of Texas pursuant to § 1404(a) for the convenience of the parties and witnesses and in the interests of justice.[6]

---

[5] Counsel for Brooks Sports' parent company has had discussions with Counsel for Plaintiff requesting that claims concerning the www.brooksrunning.com website be withdrawn from the Texas litigation. To date, the claim has not been withdrawn. Even if Plaintiff were to do so, transfer of the claims against Brooks Sports would still be warranted for the reasons set forth in Section III. b., *infra.*

[6] Brooks Sports submits that this Court should exercise its discretion to sever Plaintiff's claims against Brooks Sports and transfer them to the Eastern District of Texas separately pursuant to Federal Rule of Civil Procedure 21, based on the fact that Plaintiff is already attempting to litigate its patent infringement claims against the brooksrunning.com website in the first-filed

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. *See Genentech,* 2011 WL 2911797 at *3. In this instance, venue in the Eastern District of Texas is proper, as the case could have been brought there originally, pursuant to Plaintiff's allegations (here and in the Texas action) that at least a portion of the infringement by the accused websites occurred when consumers accessed them within the respective District. (*See e.g.* Compl., D.I. 1, at ¶¶ 20-21; *see also* Exh. D attached hereto at ¶¶ 62-63). Taking Plaintiff's allegations as true, if consumers can access the accused websites within the Eastern District of Texas, this case could have been originally filed there on the same personal and subject matter jurisdictional bases.

The second inquiry considered when determining a motion to transfer requires balancing certain private and public interests previously listed as set forth in the *Jumara* case as well as the interests of justice. Here, the relevant and applicable *Jumara* factors include the private interests of (1) the plaintiff's choice of forum, (2) defendant's preference, and (3) the convenience of the expected witnesses and location of evidence – as well as the public interests of (1) administrative difficulties and (2) practical considerations that could make the trial easy, expeditious, or inexpensive.[7] *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-880 (3d Cir. 1995) (setting forth the factors to be weighed in determining a motion to transfer); *see also Genentech,* 2011 WL 2911797 at *3-10. Each of these factors weighs strongly in favor of transfer to the Eastern District of Texas.

---

Texas action. Fed. R. Civ. P. 21 ("[O]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

[7] Because Plaintiff relies on website access, the private factor of where the claim arose is not significant. Similarly, the public factors of enforceability of the judgment and local interests in the dispute are neutral here.

### i.  The Private Interest Factors

First, the private interests warrant transfer of Plaintiff's claims against Brooks Sports.

### 1.  Plaintiff's Choice Of Forum

The Eastern District of Texas *is* Plaintiff's choice of forum.  Long before filing this case in Delaware, Plaintiff selected the Eastern District of Texas as its forum for asserting the '111 patent, on April 6, 209.  *See Parallel Networks, LLC v. Abercrombie & Fitch, Co. et al.,* No. 6-09-cv-00154 (E.D. Tx.) (docket available on Pacer).  Plaintiff has ratified that choice multiple times by its own admission, filing no less than four cases in the Eastern District of Texas for enforcement of the '111 patent.  Moreover, it is the Eastern District of Texas in which the Plaintiff chose to first make allegations against the very website, www.brooksrunning.com, that it now accuses against Brooks Sports in this case.  Plaintiff has already clearly demonstrated its private interest in favor of the Texas forum by filing multiple proceedings in that court over this very same patent, and even filing infringement contentions there directed to the same website accused here.  As the Eastern District of Texas was Plaintiff's original choice of forum, transferring this case actually allows Plaintiff's right to choose its litigation forum to remain undisturbed.  *See, e.g., Shutte v. Armco Steel Corporation,* 431 F.2d 22, 25 (3d Cir. 1970) ("Plaintiff's choice of forum 'is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed" and "the burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer.").

### 2.  Defendant's Preference

By the filing of this motion, Defendant is on record stating its preference for the Eastern District of Texas as the forum for this dispute.

### 3.  Convenience of The Parties

As one would expect from Plaintiff's original choice of Texas as its forum, Plaintiff's connections to Texas are strong.  Plaintiff is a Texas corporation.  In fact, the chain of title for the '111 patent lists Texas as the address of *every* assignee in the chain of title, suggesting that Texas itself has much to do with any business affected by the '111 patent.  Even the inventor of the patent (a key witness in the case) is listed on the face of the '111 patent as a Texas resident.  Thus, transferring this case to the Eastern District of Texas to Plaintiff's *home forum* should be more convenient and efficient for Plaintiff.  For defendant Brooks Sports, the Texas forum is no less convenient than Delaware, and is preferred.

### 4.  Convenience of Expected Witnesses

Witnesses have yet to be identified for this case, but it is expected that at least the inventor, Keith Lowery, will be a witness.  Mr. Lowery is listed on the face of the '111 patent as a resident of Richardson, Texas, and is therefore presumably very familiar with the area.   As noted above, the Texas addresses of all assignees in the chain of title for the '111 patent suggest that the business associated with the patent has been conducted in Texas, and therefore it is anticipated that Texas would be a location of relevant witnesses and evidence.   Accordingly, the private interest of convenience of witnesses favors transfer.  While Brooks Sports acknowledges that "in regard to the convenience of both parties and witnesses, this district has acknowledged that these factors are somewhat antiquated,"[8] here the fact that a key witness in this case, the

---

[8] *See Tuff Toro Corp. v. Hydro-Gear LP et al.,* 882 F.Supp. 359, 363 (D.Del. 1994) (setting forth and weighing *Jumara* factors, but ultimately denying transfer because the second filed action could not have originally been filed in the first filed jurisdiction and because the second filed case had "developed more rapidly than the first").

inventor of the patent in suit, appears to reside in Texas is of significant weight and strongly favors transfer.

### ii.  The Public Interest Factors

Second, the public interests also heavily weigh in favor of transfer.  While some of the public interest factors are neutral (e.g., enforceability of judgments, local interests, and public policies), the remaining *Jumara* public interest factors are of vital significance and point to the Eastern District of Texas where numerous prior cases are proceeding.

Specifically, efficiency of the case and practical considerations would be encouraged by transfer since the Eastern District of Texas, as the first-filed action, already has familiarity with the subject matter and technology, which will enable prompt resolution of the dispute.  Indeed, the Judge in the Eastern District of Texas has held a preliminary Markman hearing in an attempt to streamline this case and reserve judicial and economic resources – thus enabling a more easy, expeditious, and/or inexpensive trial for all parties involved.  The Texas court has already expended substantial time and resources in the first filed action.  This Court should not be called upon to duplicate those efforts.

Turning back to the statutory language of Section 1404(a) itself, these considerations also go directly to the expressed purpose of promoting the interests of justice.  "The existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice."  *See e.g. In re Volkswagen of America, Inc.,* 566 F.3d at 1351.  Here, Plaintiff has filed two almost identical lawsuits involving the same patents, same claims, and same accused instrumentality.  Accordingly, transferring Plaintiff's claims against Brooks Sports in the interest of justice to the first filed forum ensures uniform evaluation of the patent in suit and enforceability of judgment.  As previously mentioned, the Eastern District of Texas has prior and on-going experience with the facts and technology at issue in this

case due to Plaintiff's first-filed action, and transferring Plaintiff's claims against Brooks Sports

to that forum would prevent conflicting judgments by separate regional courts, not to mention

avoid unnecessary waste of duplicative resources.  *See e.g. Genentech,* 998 F.2d at 937 (holding

that the first-to-file rule "raises the issue of national uniformity in patent cases, and invokes the

special obligation of the Federal Circuit to avoid creating opportunities for dispositive

differences among the regional circuits"); *see also Vygon,* 2009 WL 856469 at *2 (The "first-

filed rule serves to eliminate economic waste involved in duplicating litigation.  Specifically,

courts are burdened by the cases they must take on, and should therefore not be called upon to

duplicate each other's work in cases involving the same issue.") (internal citations omitted).

Accordingly, transfer of this action to the Eastern District of Texas would be proper and just.

### c.   Plaintiff's Obvious Forum Shopping Warrants Dismissal or Transfer of Brooks Sports

Plaintiff's filing of this suit in Delaware, despite its pending litigation in the Eastern

District of Texas, is obvious forum shopping.  It is clear that Plaintiff is trying to avoid the claim

construction and summary judgment order from the Eastern District of Texas by filing

duplicative litigation in this Court involving the same patent, same claims, same issues, and same

accused products.  In effect, Plaintiff appears to be seeking a second chance, or second opinion,

on claim construction and infringement theories from a new court, in an attempt to confuse or

circumvent the proper appeals process.  Even if that is not the manifest intent of Plaintiff, such

confusion and inefficiencies are certainly likely to be the ultimate effect.  Preventing such forum

shopping and possible conflicting decisions is precisely the purpose of the first-filed rule and the

public interests underlying 28 U.S.C. § 1404(a).

Plaintiff should not be allowed to simultaneously proceed with identical suits against

numerous parties in separate district courts in an apparent attempt to choose which forum best

suits Plaintiff's patent litigation theories necessary to successfully allege infringement of the '111 patent. *See e.g. Pfizer, Inc. v. Apotex, Inc.,* No. 08-cv-00948, 2009 WL 2843288, *3 (D. Del. Aug. 13, 2009) (citing *Adams Respiratory Therapeutics, Inc. v. Pharm. Holdings Corp.,* No. 06-4418, Doc. No. 31, Order Denying Pl.'s Mot. Stay, at *2 (E.D. Pa. Nov. 2, 2006) and stating that "we believe it would be 'inappropriate to allow a plaintiff to file identical actions in different courts and then pick the court in which it wishes to proceed'"")). Accordingly, the Court should dismiss Plaintiff's claims or, alternatively, transfer the instant litigation to the Eastern District of Texas.

## IV. CONCLUSION

For the reasons stated above, this Court should dismiss Plaintiff's claims for patent infringement, or alternatively, sever and transfer Plaintiff's claims against Brooks Sports to the Eastern District of Texas.

Dated:  November 18, 2011

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (# 3726)
Richard K. Herrmann (# 405)
MORRIS JAMES LLP
500 Delaware Ave., Ste. 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
rherrmann@morrisjames.com

*Attorneys for Defendant Brooks Sports, Inc.*

*OF COUNSEL*

Nathan W. Johnson
njohnson@babc.com
Joel Kuehnert
jkuehnert@babc.com
Brie L. B. Buchanan
bbuchanan@babc.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

*Attorneys for Defendant Brooks Sports Inc.*

15

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | | |
|---|---|---|---|
| **PARALLEL NETWORKS, LLC** | § | | |
| | § | | |
| **Plaintiff** | § | | |
| | § | | |
| **vs.** | § | **CASE NO. 6:10cv111 (Lead Case)** | |
| | § | **PATENT CASE** | |
| **ABERCROMBIE & FITCH, ET AL.** | § | | |
| | § | | |
| **Defendants** | § | | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for claim construction of three key terms and consideration of Defendants' motion for summary judgment of noninfringement (Docket No. 481). Having considered the parties' written submissions and oral arguments, the Court construes the three terms as stated below and **GRANTS,** in part, Defendants' motion for summary judgment.

## BACKGROUND

**Procedural History**

Plaintiff Parallel Networks, LLC ("Parallel") originally brought this case as four separate actions, naming over 100 defendants, and alleging infringement of United States Patent No. 6,446,111 ("the '111 Patent") in all four cases. On March 1, 2011, the Court held a status conference in all four cases to discuss the most efficient manner in which to handle this case with this many defendants. Defendants suggested that three claim terms would be case dispositive for nearly all Defendants and requested an early claim construction and summary judgment hearing on these terms. Parallel acknowledged that certain terms would be important to its infringement case. Believing that

1

construing these three limited terms early in the case could resolve several important issues, the

Court set this case for an early *Markman* and summary judgment hearing.

## Technology

The '111 Patent, entitled "Method and Apparatus for Client-Server Communications Using

a Limited Capability Client Over a Low Speed Communications Network," issued on September 3,

2002. The claimed invention generally relates to a method and apparatus for client-server

communication. Upon a client request, the server dynamically generates an applet having selected

characteristics enabled as a response to the client request and sends the applet to the client. '111

patent at 1:7–13. The applet is substantially self-sufficient and does not depend on services being

available on the client for the applet to use. '111 patent at 2:59–61. Exemplary claim 1 requires:

> 1. A data processing system comprising a server coupled to a communications link and operable to receive a request from a client device and to collect a plurality of data items, wherein the data items comprise specific information collected as a function of the request; an executable applet dynamically generated by the server in response to the request, a constituent system associated with the applet comprising a subset of the data items, each data item in the subset used as at least one pre-loaded value in the applet; a further constituent system associated with the applet comprising a data interface capability configured to provide a plurality of operations on the pre-loaded values, the operations comprising operations associated with the subset of the data items; and the applet operable to be transferred over the communications link to the client device.

## CLAIM CONSTRUCTION

### Applicable Law

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to

which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381

F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic

evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*,

388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips,* 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed

3

meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.,* 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

**"Executable applet"**

| Parallel's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "program code that interacts locally with a client and that can be discarded" | "a small, substantially self-sufficient application, containing the requisite functionality and the necessary data to operate, that depends on substantially no services (e.g., web browser or plug-in) on a client device." |

Parallel argues the specification discloses that the applet contains computer program code that is executed on the client device. Parallel further argues the specification discloses that while the applet is executed, it interacts locally on the client device without the need to communicate with the server and the applet can be discarded after it is used (although it may also remain on the client device). Parallel contends Defendants' proposed construction improperly reads limitations into the claims, e.g., "small" and "substantially self sufficient," and Defendants' contention that the applet cannot use a "web browser or a plug-in" is explicitly contradicted by the clear disclosures in the specification.

Defendants argue the patentee expressly defined "executable applet" in the specification:

The present invention provides a number of technical advantages. One such technical advantage is the capability to respond to client requests for information from a server using a dynamically generated, selected characteristic enabled, transient applet. The applet that is sent to the client is substantially self-sufficient and depends on substantially no services being available on the client for the applet to use. . . . [T]he use of such an applet allows the human operator of a handheld device which has limited memory and limited or no secondary storage capabilities to initiate and complete a transaction with a server without having to load and store a variety of support programs which may be required by the server.

'111 Patent at 2:55–3:5 (emphasis by Defendants). Defendants argue that the patentee emphasized the present invention's self-sufficiency as an advantage over the prior art. They argue that the

5

claimed "executable applet" can be executed without the prior art's paraphernalia, such as a web browser or plug-in. Defendants further contend that the executable applet must contain both the requisite functionality and necessary data to operate. *See id.* at 2:64–67, 17:14–16, Fig. 2. Finally, Defendants contend Parallel's proposed construction is supported by the specification's description of the prior art rather than the specification's description of the invention.

Defendants' proposed construction is based on an underlying and erroneous premise that claims 1 and 17 are limited to web browsing. *Cf. id.* at 8:30–34 ("the network 14 may comprise the Internet or another suitable type of Local Area Network (LAN), Medium Area Network (MAN), Wide Area Network (WAN), intranet or any other suitable computer network well-known in the art"). Defendants' contention that "executable" means the applet can be run on the CPU without additional resources is misplaced. Further, the terms "small," "substantially self-sufficient," "substantially no services," "requisite functionality," and "necessary data" in Defendants' proposed construction are vague and possibly indefinite.

Parallel's construction that the applet can be discarded imports a limitation from the preferred embodiment that is not required by the claims. Moreover, it describes what can be done to the applet but does not describe what the applet is. Additionally, Parallel's limitation "that interacts locally with a client" is based on a reference in the specification to a capability to "interact with the user locally," *see id.* at 5:66–6:1, but the user and client are not necessarily synonymous.

The parties do not dispute that an "applet" is a program. The Court construes "executable applet" as "program code that can be used by a client device."

6

**"[Applet] dynamically generated by the server in response to the request" (Claim 1) / "generating [an executable applet] dynamically in response to the data request" (Claim 17)**

| Parallel's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "Generated by the server to have particular services and data for the client based on the request"/ "Generating [an executable applet] to have particular services and data for the client based on the data request" | "Constructed at the server, by combining the requisite functionality with the necessary data, at the time of and in response to the client request" / "Constructing at the server, by combining the requisite functionality with the necessary data, at the time of and in response to the client request" |

This term raises three issues: (1) what it means that the applet is "dynamically generated," (2) when is the applet generated, and (3) whether the applet is necessarily sent in a single transmission.

Parallel argues its construction is supported by the specification while Defendants improperly attempt to limit the claim language by reading into the claims other terms, such as "constructing" or "created," that are inconsistent with the specification's use of the term "generated." Parallel contends the applet does not have to be generated at or after the client request so long as the applet contains what is requested.

Defendants argue that because the claim language includes "dynamically generated," the applet must be generated at the time of and in response to the client request. Defendants contend the applet cannot exist before the server receives the request. In addition to the claim language itself, Defendants rely on the prosecution history and the patentee's statements distinguishing the Johnson prior art to support their position. Defendants contend that the applet is constructed at the time of the request by combining the necessary functionality and data. Finally, Defendants contend that the applet must be transferred to the client in one package containing both functionality and data.

7

Parallel's construction and arguments read out the limitation "in response to the data request." The claim language expressly requires that the applet is generated in response to the request. For the applet to be generated in response to the request, the request must come first and the applet cannot predate the request. This is consistent with other portions of the claim language. The applet includes data items comprised of "specific information collected as a function of the request." '111 patent at 17:51–52 (claim 1); *see also id.* at 18:59–60 ("collecting on the server a plurality of data items in response to the data request") (claim 17).

This interpretation is also consistent with the prosecution history. The examiner rejected the claims as obvious in light in U.S. Patent No. 5,923,885 ("Johnson"). To overcome the rejection, the patentee argued that:

> Johnson does not teach or suggest an executable applet "dynamically generated by the server in response to the request" as Johnson teaches that software applications from the server are identified and selected, not "generated by the server in response to the request." Johnson, Abstract. Also, Johnson does not teach generating "in response to the request" as Johnson only teaches selection and identification of existing software applications.
>
> In addition, Johnson teaches away from an applet "dynamically generated by the server in response to the request" because Johnson teaches selection and identification of already existing software applications. One skilled in the art would be motivated by Johnson to create software application and then make those applications available to a client, not applets dynamically generated by the server "in response to the request."

April 23, 2001 Response to Office Action at 8 (Docket No. 481–39). In distinguishing Johnson, the patentee disclaimed pre-existing applets that were merely selected, and not generated, based on the client request. Parallel's arguments on this issue directly contradict how the patentee distinguished Johnson to the examiner. In order for the applet to be "dynamically generated," it must be generated after the client request is made.

8

Parallel argues that the applet may be generated by using templates or existing code created before the client request is made and therefore an applet can exist before the request is received from the client. *See id.* at 12:15–20. The specification describes various ways to generate the applet. "The applet 26 may be generated by combining various predefined units together based on the data in the data storage system 32. The applet may also be generated by using templates which are customized based on the data to be included in the data storage system 32." *Id.* at 12:11–16. The Court's construction does not exclude combining pre-existing pieces of code to build the applet in response to the client request. However, the specification and prosecution history are clear that the claimed invention does not encompass applets that exist as completed applets before the client request is made.

Also supporting Defendants' construction, the specification describes that the applet's construction has data manipulation functionality combined with the data:

> FIG. 2 is a block diagram showing further details of the system of FIG. 1. As discussed previously, because of the unique construction of the applet, the applet 26 comprises both a data manipulation system 30 and a data storage system 32 which are each constituent systems associated with the applet 26. The data manipulation system 30 may also comprise a portion of the applet 26, similarly, the data storage system 32 may also comprise a portion of the applet 26. The data manipulation system 30 includes all capabilities required for the operator of the client 12 to utilize data in the data storage system 32. The data manipulation system 30 enables the applet 26 to handle the various characteristics associated with the data included in the applet 26 items 28 retrieved in response to the request from the client 12 and to handle client specific characteristics. In particular, the data manipulation system 30 of the applet 26 will provide the client 12 with whatever suitable data interface is required to access and utilize the data in the data storage system 32.

'111 patent at 11:7–29.

> The data manipulation system 30 may include specific functionality required by the data in the data storage system 32. By combining the functionality in the data manipulation system 30 with the data of the data storage system 32 the design

9

methodology behind the applet 26 can be shifted from the traditional focus on writing a generic program one time and using that program with a variety of different data types, to writing a program specifically for particular data.

*Id.* at 11:54–61.  Because the applet combines the functionality with data, the constituent operations and data systems are transferred to the client in a single transmission rather than separate transmissions of each part.  The Summary of the Invention expressly states that the functionality and data are sent in a single transmission:

> A further advantage is that the total amount of data transferred between the client and the server over a communications link is decreased.  By transmitting the appropriate data and associated data handling capabilities as a group, the client may be required to communicate over a low-speed communications link a greatly reduced number of times or, in some cases, only once.  Yet another advantage is found in the avoidance of transmitting duplicate data by using updateable elements and a loader within the applet to load only new data desired by the client from the server, instead of completely retransmitting all the information in order to include small changes.

*Id.* at 3:11–22.  The Detailed Description of the Invention furthers this understanding:

> The total number of accesses made over the communications link 16 from the client 12 is also decreased by including the data requested by the client 12 in the applet 26 as part of a single transmission.  Stated another way, instead of downloading generic program functionality to the client 12 and then having the program use the communication link 16 in order to access required data, the needed functionality and the required data are bundled together in the applet 26 and may be transferred to the client 12 as part of the single transmission.

*Id.* at 12:2–11.  The specification is clear that one advantage of the claimed invention is that the data and functionality are sent together to the client to reduce the number of transmissions.  This is especially useful when communicating over low-speed communications links.  This does not however exclude additional communications between the server and client once the applet is in place.  *See id.* at 14:57–62.

Accordingly, the Court adopts Defendants' proposed construction and construes "[applet]

10

dynamically generated by the server in response to the request" (claim 1) as "constructed at the server, by combining the requisite functionality with the necessary data, at the time of and response to the client request" and "generating [an executable applet] dynamically in response to the data request" (claim 17) as "constructing at the server, by combining the requisite functionality with the necessary data, at the time of and in response to the client request."

**"Data interface capability"**

| Parallel's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "program code that allows the client to access and use data" | "data manipulation functionality that operates without a web browser or plug-ins" |

Parallel argues its construction is supported by the specification and Defendants improperly narrow the claim language by reference to a web browser or a plug-in in contradiction to the specification.

Defendants contend the specification makes clear the claimed invention is narrower than the plain claim language. Defendants argue the patentee distinguished his invention's data manipulation functionality from the operations of web browsers or plug-ins both in the specification and during prosecution.

As previously discussed, Defendants' construction for this term is based on an erroneous assumption that the claims are limited to a web-based environment. The specification does not support Defendants' narrow construction. The specification only indicates a permissive use that excludes web browsers or plug-ins:

> The teachings of the present invention allow a server computer to provide data and applications of various types to clients without the use of plug-ins. The data and information may be packaged together in an applet with associated functionality for the data and information. The data and information may be represented using

11

> pre-loaded, non-updateable elements or through a selected combination of non-updateable elements and updateable elements in the applet based on a prediction made by the server regarding which method will result in lower total amounts of information being transferred over a low-speed link coupling the server to the client. Thus, more efficient use of client and communications link resources over traditional methods is provided.

*Id.* at 17:12–25.

Nor does the prosecution history support Defendants' position. In distinguishing Johnson, the patentee referred to the user interface of a browser rather than the data interface of the executable applet: "Johnson does not teach or suggest an 'applet dynamically generated by the server [. . .]' because Johnson merely involves . . . transmitting the user interface of a browser." Oct. 16, 2001 Resp. to Office Action at 8 (Docket No. 481–41); Nov. 1, 2001, Adv. Action at 2 (Docket No. 481-42). The patentee's statement was not a disclaimer of the use of web browsers or plug-ins. Defendants also argue the patentee added the claim language "a data interface capability" to gain allowance over Johnson. However, the patentee actually amended the entire "further constituent system" limitation, adding to the claim language "a further constituent system associated with the applet comprising a data interface capability configured to provide a plurality of operations on the pre-loaded values, the operations comprising operations associated with the subset of the data items." Nov. 16, 2001 Amend. at 8 (Docket No. 481-43). Accordingly, Defendants' proposed construction is not supported by the specification or prosecution history.

Parallel's proposed construction is consistent with the specification as a whole, and the Court construes "data interface capability" as "program code that allows the client to access and use data." *See* '111 patent at 11:21–24.

# SUMMARY JUDGMENT

## Background

Defendants move for summary judgment on two issues. First, Defendants contend they do not infringe because the alleged "executable applet[s]," with their "data interface capability," are not substantially self-sufficient and depend on a web browser or plug-in to operate. As the Court is not adopting Defendants' proposed claim constructions that would import this limitation, Defendants' first summary judgment issue is moot. Second, Defendants contend they do not infringe because the alleged "executable applet[s]" do not combine the requisite data and associated functionality at the server and are not sent to the client in a single transmission. Having adopted Defendants' construction for the "dynamically generated" term, the Court will examine whether Defendants are entitled to summary judgment.

## Applicable Law

To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1467 (Fed. Cir. 1998) (en banc ). Summary judgment is appropriate following a claim construction when there is no genuine issue of material fact remaining. FED. R. CIV. P. 56; *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1312 (Fed. Cir. 2007).

## Analysis

At the time this motion was filed, this issue affected 99 Defendants (the "Moving Defendants"). Parallel has only accused the Moving Defendants of literal infringement. Parallel does not dispute how the Moving Defendants' systems operate. *See* Parallel's Reply in Support of Its Opening Claim Construction Brief and Response to Defendants' Motion for Summary Judgment

13

at 28 (Docket No. 526) ("[D]efendants' experts identify three "load sequences" for the transmission of the applets in the accused instrumentalities, which Parallel will accept for purposes of this summary judgment response."). Defendants' experts identify three ways in which the Moving Defendants' systems function. Defendants' Resp. Claim Const. Brief and Mtn. for Summ. J. Exs. A1 at 40, 41, 42 (Docket No. 481-2); A2 at 42, 43, 44 (Docket No. 481-3); A3 at 44, 45, 46 (Docket No. 481-4). In the first case, the HTML response to the client request includes the necessary data and a link to the functional code. In the second case, both the data and functional code are contained as a link in the HTML response. In the third case, the data is contained in the functional code as a link. Thus, in all three instances, at least one of the functional code or necessary data is contained in the HTML response as only a link.

The Court has construed "[applet] dynamically generated by the server in response to the request" (claim 1) as constructed at the server, by combining the requisite functionality with the necessary data, at the time of and response to the client request" and "generating [an executable applet] dynamically in response to the data request" (claim 17) as "constructing at the server, by combining the requisite functionality with the necessary data, at the time of and in response to the client request." The issue on summary judgment is whether the Moving Defendants' accused instrumentalities combine the data and functionality at the server.

Parallel contends the accused instrumentalities' data and functionality are associated with the applets because an applet can be constructed with the functionality and data sent as separate files to be assembled and executed on the client device. Parallel also disputes whether Defendants' single transmission limitation is a proper claim limitation.

The present invention's applet combines both the functional code and data. The claim language requires both the data and functional code exist as operative components of the applet. The claim language describes the applet as transferred over the communications link to the client device and having two constituent systems: data and data interface capability (functionality). Therefore, the claim language indicates that in the HTML context, the data and functional code are associated by actually being listed within the HTML code and not merely provided in a link.

The specification also indicates that the applet contains an executable program and particular data: "the applet 26 does not merely contain an executable program as with typical applets. In contrast, the applet 26 also comprises particular services and data for the client 12 based on the request." '111 patent at 9:39–43. "Another way of looking at the applet 26 is to consider applet 26 as comprising a program, which acts as the data manipulation system 30, with a particular payload of data occupying the data storage system 32." *Id.* at 12:52–55; *see, e.g., id.* at 11:9–12; 17:12–16.

> When the applet 26 is generated, the applet 26 also comprises substantially all of the data manipulation capabilities for reviewing, manipulating, and utilizing the data items 28 represented by pre-loaded elements 36 in the applet 26. Since the applet 26 comprises substantially all of the data items 28 appropriate to respond to the request, repeated transfers of information over the communications link 16 may be avoided. Stated another way, the pre-loaded elements 36 may leech off of the loading of the data manipulation capabilities to provide data and functionality to the applet 26.

*Id.* at 15:36–46.

Not only does the patent teach that the functionality and data are combined in the applet, the patent teaches away from the necessity of multiple transmissions to communicate the applet to the client as would be required by including either the data or functionality in an HTML link. "By transmitting the appropriate data and associated data handling capabilities as a group, the client may be required to communicate over a low-speed communications link a greatly reduced number of

times or, in some cases, only once." *Id.* at 3:13–17.

> The total number of accesses made over the communications link 16 from the client 12 is also decreased by including the data requested by the client 12 in the applet 26 as part of a single transmission. Stated another way, instead of downloading generic program functionality to the client 12 and then having the program use the communication link 16 in order to access required data, the needed functionality and the required data are bundled together in the applet 26 and may be transferred to the client 12 as part of the single transmission.

*Id.* at 12:2-11; *see also id.* at 8:4-8.

The Moving Defendants' accused instrumentalities do not operate in the manner claimed by the '111 patent. Moreover, they function in the precise way taught away from by the patent. By including either the data or functionality in a link rather than actual code to communicate the data or functionality, multiple transmissions between the server and client are required to transmit the necessary aspects of the applet.

Parallel has accused the Moving Defendants of literal infringement. By including a link, rather than the actual code, to either the data or functionality of the accused applet, the Moving Defendants do not satisfy the "[applet] dynamically generated by the server in response to the request" limitation of Claim 1 or the "generating [an executable applet] dynamically in response to the data request" of Claim 17. Accordingly, the Moving Defendants are entitled to summary judgment of non-infringement.

## CONCLUSION

For the reasons given, the Court construes the terms as stated and **GRANTS** Defendants' motion for summary judgment in part.

As of the filing of Defendants' claim construction brief and summary judgment motion, 112 Defendants remained in the case. The summary judgment motion on the "dynamically generated"

issue has resolved this case as to 99 of the 112 Defendants. The Court notes that in many patent cases before it involving multiple defendants, it is frequently faced with motions for severance and transfer to many different districts. Had the Court taken that approach in this case, Parallel and Defendants would be litigating this patent all over the country in many districts at great additional expense to all parties and the judiciary.

The Court commends the parties in this case for working together to identify issues common to nearly all Defendants and moving the case to resolution of these important issues in a timely and economic manner. By doing so, this case was resolved in a manner of months—as opposed to years—for the vast majority of Defendants. By all Defendants remaining in one case in one District, the Court was able to resolve the controversy in the most judicially economic manner sparing many other courts from repetitive work, and at the same time saving the parties very significant sums of money in attorneys fees.

**So ORDERED and SIGNED this 12th day of August, 2011.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

Parallel Networks, LLC,

    Plaintiff,

    v.

Abercrombie & Fitch Co., et al.,

    Defendants.

No. 6:10-cv-00111-LED (Lead Case)

CONSOLIDATED

Jury Trial Demanded

## PARALLEL NETWORKS, LLC'S MOTION TO ALTER OR AMEND THIS COURT'S SUMMARY JUDGMENT ORDER UNDER RULE 59(e), F.R.C.P.

George S. Bosy
David R. Bennett
Bosy & Bennett
300 N. La Salle St.
49th Floor
Chicago, Illinois 60654
Telephone: (312) 803-0437
Email: gbosy@bosybennett.com
      dbennett@bosybennett.com

Charles Craig Tadlock
Texas State Bar No. 00791766
TADLOCK LAW FIRM
400 E. Royal Lane, Suite 290
Irving, Texas 75039
Telephone: (214) 785-6014
craig@tadlocklawfirm.com
 and
315 N. Broadway, Suite 307
Tyler, Texas 75702
Telephone: (903) 283-2758

ATTORNEYS FOR PLAINTIFF
PARALLEL NETWORKS, LLC

Dated:  September 9, 2011

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

TABLE OF EXHIBITS ...................................................................................................... iii

I.      BACKGROUND ...................................................................................................... 2

II.     STATEMENT OF FACTS ....................................................................................... 3

     A.    The Court's Construction of the Term "Dynamically Generated by the Server in Response to the Request" was not Proposed by Either Party...................................... 3

     B.    The Court's Construction of the Term "Executable Applet" is Different from Either Parties' Proposed Construction....................................................................... 5

     C.    Parallel's Amended Infringement Contentions Establish Infringement Under the Court's Claim Constructions ...................................................................................... 5

III.    APPLICABLE LAW ................................................................................................ 6

IV.    ARGUMENT ............................................................................................................ 7

     A.    The Court Should Vacate Its Summary Judgment Order Due to an Intervening Change in the Law, New Evidence, and to Prevent Manifest Injustice ..................... 8

          1.    The Court's Claim Construction Order was An Intervening Change in the Law of the Case ................................................................................................ 8

          2.    Parallel's Amended Infringement Contentions Could Not Have Been Anticipated Prior to the Court's Claim Construction Order ............................... 8

          3.    The Court's Summary Judgment Order Should be Vacated To Prevent Manifest Injustice................................................................................................ 9

     B.    Parallel Meets the Relevant Legal Standard for Amending its Infringement Contentions .......................................................................................................... 11

CONCLUSION .................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*In re Benjamin Moore & Co.*,
  318 F. 3d 626 (5th Cir. 2002) ......................................................................................................... 6

*Mass Engineered Design v. Egrotron, Inc.*,
  2008 WL 1930299 (E.D. Tex. Apr. 30, 2008) ............................................................................ 12

*Nidec Corp. v. LG Innotek Co.*,
  2009 WL 3673253 (E.D. Tex. Sept. 2, 2009 ............................................................... 7, 11, 12

*Xerox Corp. v. Genmoora Corp.*,
  888 F.2d 345 (5th Cir. 1989) ........................................................................................................ 9

# TABLE OF EXHIBITS

Exhibit 1:    Table of status of defendants

Exhibit 2:    Table of defendants and websites for which Parallel seeks to vacate the
              Court's grant of summary judgment

Exhibit 3:    Table of defendants and websites denied summary judgment (or did not
              move for summary judgment)

Exhibit 4:    Declaration of David R. Bennett

Exhibit 5:    Amended infringement contention for www.amazon.com (Quicklist)

Exhibit 6:    Amended infringement contention for www.amazon.com (Today's Deals)

Exhibit 7:    Amended infringement contention for www.aol.com

Exhibit 8:    Amended infringement contention for www.mail.aol.com

Exhibit 9:    Amended infringement contention for www.asicsamerica.com

Exhibit 10:   Amended infringement contention for www.bentleymotors.com

Exhibit 11:   Amended infringement contention for www.bustedtees.com

Exhibit 12:   Amended infringement contention for www.cabela.com

Exhibit 13:   Amended infringement contention for www.bulovaspaceview.com/en

Exhibit 14:   Amended infringement contention for www.coldwatercreek.com

Exhibit 15:   Amended infringement contention for disneyland.disney.go.com

Exhibit 16:   Amended infringement contention for www.kellytires.com

Exhibit 17:   Amended infringement contention for www.google.com (Finance)

Exhibit 18:   Amended infringement contention for checkout.google.com

Exhibit 19:   Amended infringement contention for chrome.google.com/webstore

Exhibit 20:   Amended infringement contention for picasa.google.com

Exhibit 21:   Amended infringement contention for www.youtube.com

Exhibit 22:   Amended infringement contention for www.rocawear.com

Exhibit 23:   Amended infringement contentions for www.sears.com and
www.kmart.com

Exhibit 24:   Amended infringement contentions for www.craftsman.com,
www.kenmore.com, www.thegreatindoors.com

Exhibit 25:   Amended infringement contention for www.motorola.com

Exhibit 26:   Amended infringement contention for www.netflix.com

Exhibit 27:   Amended infringement contention for www.newbalance.com

Exhibit 28:   Amended infringement contention for www.shopnewbalance.com

Exhibit 29:   Amended infringement contentions for www.shopwarrior.com and
www.shoppfflyers.com

Exhibit 30:   Amended infringement contention for www.nordstrom.com

Exhibit 31:   Amended infringement contention for www.trip.com

Exhibit 32:   Amended infringement contention for www.rugby.com

Exhibit 33:   Amended infringement contention for www.redbox.com

Exhibit 34:   Amended infringement contention for www.subaru.com

Exhibit 35:   Amended infringement contention for www.target.com

Exhibit 36:   Amended infringement contention for www.toyota.com

Exhibit 37:   Amended infringement contention for www.victoriassecret.com

Exhibit 38:   Amended infringement contention for www.audiusa.com

Exhibit 39:   Amended infringement contention for www.vw.com

Exhibit 40:   Amended infringement contentions for www.williams-sonoma.com,
www.potterybarnkids.com, www.pbteen.com, www.westelm.com, and
www.wshome.com

Exhibit 41:   Amended infringement contention for www.potterybarn.com

Exhibit 42:   Amended infringement contention for www.zappos.com

**PARALLEL NETWORKS, LLC'S MOTION TO ALTER OR AMEND THIS
COURT'S SUMMARY JUDGMENT ORDER UNDER RULE 59(e), F.R.C.P.**

Parallel Networks, LLC ("Parallel") brings the instant motion under Rule 59(e)

Fed.R.Civ.P., asking this Court to vacate its order granting summary judgment[1] in favor of 45

defendants ("defendants-in-issue") and their websites identified at Exhibits 1 and 2.[2]  Parallel's

motion is ***not*** seeking to vacate the Court's grant of summary judgment for the remaining 36

defendants granted summary judgment (identified at Exhibit 1)[3] and, therefore, the Court's

expedited proceeding will still have moved the case to resolution with respect to a large number

of defendants.

Parallel's timely amendments to its infringement contentions under P.R. 3-6(a) are

grounded in its good faith belief that the Court's claim construction ruling, which defined claim

terms in a way that was not proposed by either party and that could not have been anticipated,

calls for and allows for the amendment of Parallel's infringement contentions.  The grant of

Parallel's motion will serve the interests of justice:  the defendants-in-issue are not entitled to

summary judgment based on Parallel's amended infringement contentions that apply the Court's

---

[1]     As of the date of the Court's *Markman* and summary judgment Memorandum Opinion
and Order, D.I. 566, there were 99 defendants in the case (identified at Exhibit 1).  Defendants
erroneously contended in their summary judgment motion that there were only 13 defendants to
whom the summary judgment motion did not apply (*See* D.I. 481 at 22, 24).  The Court's
summary judgment order granted summary judgment for all accused websites for 73 defendants,
thereby leaving 26 defendants with one or more accused websites that were not subject to the
summary judgment order. (Exhibit 1; Exhibit 2; Exhibit 3).  This motion is applicable to 37 of
the 73 defendants who were granted summary judgment and 8 defendants who were granted
summary judgment on fewer than all of their accused websites.  (Exhibit 1; Exhibit 2).
[2]     This motion does not ask for reconsideration of the Court's claim construction order, in
particular its constructions of the terms "executable applet" and "dynamically generated by the
server in response to the request"/"generating [an executable applet] dynamically in response to
the request."  However, Parallel does not agree with this Court's construction of these terms and
Parallel is not waiving the right, and is expressly reserving the right, to challenge these
constructions in this Court or in the Court of Appeals.
[3]     Parallel is not waiving the right, and is expressly reserving the right, to challenge the
Court's grant of summary judgment for these 37 defendants in the Court of Appeals.

1

claim construction. Parallel's amended infringement contentions identified in Exhibit 4 are

attached as Exhibits 5 - 42.[4]

## I.     BACKGROUND

This is an action in which Parallel, as owner of U.S. Patent No. 6,446,111 ("the '111

patent"), brought suit for patent infringement against a number of defendants.  In order to

address potentially case dispositive issues in a timely and economical manner, the Court ordered

a novel procedure consisting of an expedited mini-*Markman* proceeding on three claim terms

and a simultaneous summary judgment proceeding.  (D.I. 338 at 7).  The Court significantly

limited discovery during the expedited proceeding (*Id.*), so that most defendants produced few

documents, no depositions have been taken, and 74 of the remaining 99 defendants have never

responded to any interrogatories.  Over six months remain for discovery, which ends on March

21, 2012.  (D.I. 470).

On August 12, 2011, this Court issued its claim construction ruling on the three terms at

issue in the mini-*Markman* proceeding and granted summary judgment entirely for 73

defendants, leaving 26 defendants with one or more accused website not subject to the summary

judgment order.  (D.I. 566, Memorandum Opinion and Order; Exhibit 1; Exhibit 3).  In relevant

part, the Court adopted defendants' proposed construction for the term "dynamically generated

by the server in response to the request" but the Court additionally found that this term required

that the applet must be transferred in a "single transmission," a limitation that was not proposed

by any party.  (D.I. 566 at 10, 15-16; June 21, 2011, mini-*Markman* and Summary Judgment

Hearing Trans. ("*Markman* Trans.") at 98:23-25; D.I. 526 at 13-14).  In addition, the Court's

---

[4]     Parallel has attached to this Motion its amended infringement contentions that it has
completed as of the filing of this brief.  (Exhibit 4).  Under P.R. 3-6(a), Parallel will complete its
remaining amended infringement contentions by September 12, 2011, and Parallel intends to file
the remaining amended infringement contentions with the Court when they are completed.
(Exhibit 4 at ¶4).

# EXHIBIT C

## <u>EXHIBIT 2</u>

Parallel is amending its infringement contentions for the following 45 defendants and their websites and, therefore, Parallel asks the Court to vacate its summary judgment order with respect to the following 45 defendants and websites:

Amazon.com, Inc.
        www.amazon.com (Quicklist)
        www.amazon.com (Wishlist)
        www.amazon.com (Today's Deals)

AOL Inc.
        www.aol.com
        www.mail.aol.com

ASICS America Corporation
        www.asicsamerica.com

Barnes & Noble, Inc.; barnesandnoble.com LLC
        www.barnesandnoble.com

Bentley Motors Ltd.; Bentley Motors, Inc.
        www.bentleymotors.com

Brain Busters, LLC; IAC Search & Media, Inc.
        www.bustedtees.com

Cabela's Inc.
        www.cabela.com

Citizen Watch Company of America, Inc.
        www.bulovaspaceview.com/en

Coldwater Creek, Inc.
        www.coldwatercreek.com

Disney Online
        disneyland.disney.go.com

Goodyear Tire & Rubber Company, The
        www.kellytires.com

Google Inc.
        www.google.com (Finance)
        www.google.com (Reader)
        www.google.com/shoppinglist

1

www.google.com/calendar
www.google.com (iGoogle)
checkout.google.com
chrome.google.com/webstore
docs.google.com
picasa.google.com
translate.google.com
wave.google.com
www.admob.com
www.youtube.com

HSN Interactive LLC; HSN LP
www.hsn.com
www.jewelry.hsn.com
www.fashion.hsn.com
www.shoes-handbags.hsn.com
www.home-decor.hsn.com
www.home-solutions.hsn.com
www.health-fitness.hsn.com

Iconix Brand Group, Inc.; IP Holdings, LLC; Onestop Internet, Inc.
www.rocawear.com

Kmart Corporation; Sears Brands, LLC; Sears Holdings Corporation; Sears, Roebuck and Co.
www.sears.com
www.craftsman.com
www.kenmore.com
www.kmart.com
www.thegreatindoors.com

Motorola Mobility, Inc.
www.motorola.com

Netflix, Inc.
www.netflix.com

New Balance Athletic Shoe, Inc.
www.newbalance.com
www.shopnewbalance.com
www.shopwarrior.com
www.shoppfflyers.com

Nordstrom, Inc.
www.nordstrom.com

Orbitz Away, LLC; Orbitz Worldwide, Inc.; Orbitz Worldwide, LLC; Orbitz, LLC
>    www.trip.com

Oriental Trading Company, Inc.
>    www.orientaltrading.com

Ralph Lauren Media, LLC
>    www.rugby.com

Redbox Automated Retail, LLC
>    www.redbox.com

Russell Brands, LLC
>    www.brooksrunning.com

Subaru of America, Inc.
>    www.subaru.com

Target Corporation
>    www.target.com

Toyota Motor Sales U.S.A., Inc.
>    www.toyota.com

TripAdvisor LLC
>    www.tripadvisor.com

US Airways, Inc.
>    www.usairways.com

Victoria's Secret Direct Brand Management, LLC
>    www.victoriassecret.com

Volkswagen Group of America, Inc.
>    www.audiusa.com
>    www.vw.com

Williams-Sonoma, Inc.
>    www.williams-sonoma.com
>    www.potterybarn.com
>    www.potterybarnkids.com
>    www.pbteen.com
>    www.westelm.com
>    www.wshome.com

Zappos Retail, Inc.
www.zappos.com

# Exhibit 63

**SUPPLEMENTAL INFRINGEMENT ANALYSIS OF UNITED STATES PATENT 6,446,111**
**BY** http://www.brooksrunning.com

The accused systems and methods are identified as those that are used to operate http://www.brooksrunning.com (including any subdomains) (the "Accused Instrumentality"). In support of these supplemental infringement contentions are Brooksrunning Source Code (attached hereto as Brooksrunning Exhibit 1), and Brooksrunning Screenshots (attached hereto as Brooksrunning Exhibit 2).

The following claim charts provide non-limiting contentions and examples demonstrating the manner in which the accused systems and methods meet the limitations of the asserted claims. The contentions and examples set forth for a particular claim limitation are not limited in application to that particular claim limitation and should be understood to apply to other claim limitations and other claims to which similar contentions and examples are provided. In addition, specific examples of products or services are intended to apply to other products or services on the Accused Instrumentality.

| Claim 1 | Infringement Analysis |
|---|---|
| A data processing system comprising: | The preamble does not function as a claim limitation. In any event, the preamble is met by the Accused Instrumentality. <br><br> The Accused Instrumentality is a data processing system. |
| a server coupled to a communications link and operable to receive a request from a client device | The Accused Instrumentality meets this limitation. <br><br> The Accused Instrumentality includes a website, such as 'http://www.brooksrunning.com' that is hosted on a server that is coupled to a communications link (e.g., the Internet) and is operable to receive a request from a client device (e.g., a computer) accessing the website. |
| and to collect a plurality of data items wherein the data items comprise specific information collected as a function of the request | The Accused Instrumentality meets this limitation. <br><br> The server collects a plurality of data items, e.g., data necessary to generate a web page including data necessary to respond to the specific client request. One non-limiting example of a plurality of data items collected as a function of the request is the information collected in response to the client's request for the web page 'http://shop.Brooksrunning.com/s/crocs-cayman-sandal-walker-toddler-little-kid/2898953?origin=category&resultback=1141'. This specific information includes |

| Claim 1 | Infringement Analysis |
|---|---|
| | data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| an executable applet dynamically generated by the server in response to the request | The Accused Instrumentality meets this limitation.<br><br>An executable applet is dynamically generated in specific response to the request, e.g., by selecting data responsive to the request. For example, one or more applets are returned by the Accused Instrumentality (that can include existing code and prewritten procedures) that are suitable for execution on the client. One non-limiting example of an executable applet is the program code that can be used by a client device, which is JSON code, referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1) which is constructed at the server by combining the requisite functionality with the necessary data at the time of and in response to the client request. The requisite functionality is present in the form of attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25), etc. corresponding to the data items present in the program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). The functionality provided by the JSON code is providing the client device with the ability to read, write, and/or modify the data associated in the attributes. See the limitations discussed below. The JSON code can be requested both in a web browser and outside a web browser using command line software and can execute on the client device (*See, e.g.,* Brooksrunning Exhibit 2: Brooksrunning Screenshot 1, Brooksrunning Screenshot 2 and Brooksrunning Screenshot 3). The executable applet is transferred in a single transmission. |
| a constituent system associated with the applet comprising a subset of the data items | The Accused Instrumentality meets this limitation.<br><br>The one or more applets returned by the Accused Instrumentality have an associated constituent system comprising a subset of data items which is included in the response to the client request as data retrieved as a function of the request. One non-limiting example is the subset of data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1), that is incorporated and utilized by the program code for further operations. |
| each data item in the subset used as at least | The Accused Instrumentality meets this limitation. |

| Claim 1 | Infringement Analysis |
|---|---|
| one preloaded value in the applet | At least one data item in the applet is a preloaded value. One non-limiting example is the subset of data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| a further constituent system associated with the applet comprising a data interface capability configured to provide a plurality of operations on the preloaded values | The Accused Instrumentality meets this limitation.<br><br>The Accused Instrumentality has a further constituent system associated with the applet having a data interface capability configured as required by this claim element. The program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1) comprises attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25), etc. that provide data interface capability by allowing the client to access and use data such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). Furthermore, the program code is configured to provide a plurality of operations on the preloaded values because it allows the client device to read, write and/or modify the data referenced from line #7 - line 3253 Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| the operations comprising operations associated with the subset of the data items; | The Accused Instrumentality meets this limitation.<br><br>The program code provides operations associated with the subset of the data items because it allows the client device to read, write, and/or modify the data in the attributes in the dynamic program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| And the applet operable to be transferred over the communications link to the client device. | The Accused Instrumentality meets this limitation.<br><br>The applet is operable to be transferred to the client device. The above identified code in Brooksrunning Source Code (Brooksrunning Exhibit 1) was sent by the server over the internet and received by the client device. One non-limiting example is executable program code dynamically constructed at the server which can be referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1), that is transferred in a single transmission over a communications link to the client device. |

| Claim 2 | Infringement Analysis |
|---|---|
| A data processing system according to claim 1, wherein the pre-loaded values are non-updateable. | The Accused Instrumentality meets this limitation.<br><br>One or more of the executable applets includes pre-loaded values which are non-updateable.<br><br>One non-limiting example is the subset of data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |

| Claim 3 | Infringement Analysis |
|---|---|
| A data processing system according to claim 1, wherein the client device comprises a wireless phone. | The Accused Instrumentality meets this limitation.<br><br>The accused web site includes web pages specified for use with wireless phones capable of running JavaScript applets, such as an Apple iPhone. The Apple iPhone is a commonly available wireless phone. |

| Claim 5 | Infringement Analysis |
|---|---|
| A data processing system according to claim 1, wherein the communications link comprises a wireless communications link. | The Accused Instrumentality meets this limitation.<br><br>The above requested web page has been accessed using a wireless communication link, namely "Wi-Fi", which is commonly used to provide wireless communication at home and business locations to provide access to the Internet and, therefore, the Accused Instrumentality. Similarly, the Accused Instrumentality is accessible using other wireless communication links, such as cellular phone networks like "Edge", "3G", and "WiMAX" operated by numerous well-known service providers. |

| Claim 6 | Infringement Analysis |
|---|---|
| A data processing system according to claim 5, wherein the wireless communications link comprises a cellular phone network. | The Accused Instrumentality meets this limitation.<br><br>The Accused Instrumentality is accessible using other wireless communication links, such as cellular phone networks like "Edge", "3G", and "WiMAX" operated by numerous well-known service providers. |

| Claim 14 | Infringement Analysis |
|---|---|
| A data processing system according to claim 1, wherein a further constituent system associated with the applet includes a data interface capability configured to provide a plurality of operations on the pre-loaded values to the client device, the operations comprising operations specific to the subset of the data items. | The Accused Instrumentality meets this limitation.<br><br>The Accused Instrumentality has a further constituent system associated with the applet providing a plurality of operations on the pre-loaded values, the operations specific to the subset of data items.<br><br>The Accused Instrumentality has a further constituent system associated with the applet having a data interface capability configured as required by this claim element. The program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1) comprises attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25), etc. that provide data interface capability by allowing the client to access and use data such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). Furthermore, the program code is configured to provide a plurality of operations on the preloaded values because it allows the client device to read, write and/or modify the data referenced from line #7 - line 3253 Brooksrunning Source Code (Brooksrunning Exhibit 1). |

| Claim 15 | Infringement Analysis |
|---|---|
| A data processing system according to claim 14, wherein the capability further comprises substantially all functionality required by the pre-loaded values. | The Accused Instrumentality meets this limitation.<br><br>The Accused Instrumentality has a capability that further comprises substantially all functionality required by the pre-loaded values. One or more of the executable applets included in the web page includes a data interface capability providing operations to alter the pre-loaded values to substantially all of their possible states.<br><br>The requisite functionality is present in the form of attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25). The functionality provided by the JSON code is providing the client device with the ability to read, write, and/or modify the data associated in the attributes. |

| Claim 17 | Infringement Analysis |
|---|---|
| A method of processing data comprising | The preamble does not function as a claim limitation. In any event, the preamble is met by the Accused Instrumentality. <br><br> The Accused Instrumentality is a method for processing data. |
| receiving a data request from a client device at a server system over a communications link; | The Accused Instrumentality meets this limitation. <br><br> The Accused Instrumentality includes a website such as 'http://www.brooksrunning.com' that is hosted on a server that is coupled to a communications link (e.g., the Internet) and is operable to receive a request from a client device (e.g., a computer) accessing the website. |
| collecting on the server a plurality of data items in response to the data request; | The Accused Instrumentality meets this limitation. <br><br> The server collects a plurality of data items, e.g., data necessary to generate a web page including data necessary to respond to the specific client request. One non-limiting example of a plurality of data items collected as a function of the request is the information collected in response to the client's request for the web page 'http://shop.Brooksrunning.com/s/crocs-cayman-sandal-walker-toddler-little-kid/2898953?origin=category&resultback=1141'. This specific information includes data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| generating an executable applet dynamically in response to the data request, | The Accused Instrumentality meets this limitation. <br><br> An executable applet is dynamically generated in specific response to the request, e.g., by selecting data responsive to the request. For example, one or more applets are returned by the Accused Instrumentality (that can include existing code and prewritten procedures) that are suitable for execution on the client. One non-limiting example of an executable applet is the program code that can be used by a client device, which is JSON code, referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1) which is constructed at the server by combining the requisite functionality with the necessary data at the time of and in response to the client request. The requisite functionality is present in the form of attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25) corresponding to the |

8

| Claim 17 | Infringement Analysis |
|---|---|
| | data items present in the program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). The functionality provided by the JSON code is providing the client device with the ability to read, write, and/or modify the data associated in the attributes. See the limitations discussed below. The JSON code can be requested both in a web browser and outside a web browser using command line software and can execute on the client device (See, e.g., Brooksrunning Exhibit 2: Brooksrunning Screenshot 1, Brooksrunning Screenshot 2 and Brooksrunning Screenshot 3).  The executable applet is transferred in a single transmission. |
| a constituent system associated with the applet including a subset of the data items therein as pre-loaded values; | The Accused Instrumentality meets this limitation. The one or more applets returned by the Accused Instrumentality have an associated constituent system comprising a subset of data items which is included in the response to the client request as data retrieved as a function of the request. One non-limiting example is the subset of data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1), that is incorporated and utilized by the program code for further operations. At least one data item in the applet is a preloaded value. One non-limiting example is the subset of data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| wherein a further constituent system associated with the executable applet comprises a data interface capability configured to provide a plurality of operations on the pre-loaded values, | The Accused Instrumentality meets this limitation. The Accused Instrumentality has a further constituent system associated with the applet having a data interface capability configured as required by this claim element. The program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1) comprises attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25), etc. that provide data interface capability by allowing the client to access and use data such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). Furthermore, the program code is configured to provide a plurality of operations on the preloaded values because it allows the client device to read, write and/or modify the data referenced from line #7 - line |

| Claim 17 | Infringement Analysis |
|---|---|
| | 3253 Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| the operations comprising operations associated with the subset of the data items; | The Accused Instrumentality meets this limitation.<br><br>The program code provides operations associated with the subset of the data items because it allows the client device to read, write, and/or modify the data in the attributes in the dynamic program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |
| And transferring the applet to the client device. | The Accused Instrumentality meets this limitation.<br><br>The applet is operable to be transferred to the client device. The above identified code in Brooksrunning Source Code (Brooksrunning Exhibit 1) was sent by the server over the internet and received by the client device. One non-limiting example is executable program code dynamically constructed at the server which can be referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1), that is transferred in a single transmission over a communications link to the client device. |

| Claim 22 | Infringement Analysis |
|---|---|
| A method of processing data according to claim 17, wherein the communications link comprises a wireless link. | The Accused Instrumentality meets this limitation.<br><br>The above requested web page has been accessed using a wireless communication link, namely "Wi-Fi", which is commonly used to provide wireless communication at home and business locations to provide access to the Internet and, therefore, the Accused Instrumentality. Similarly, the Accused Instrumentality is accessible using other wireless communication links, such as cellular phone networks like "Edge", "3G", and "WiMAX" operated by numerous well-known service providers. |

| Claim 23 | Infringement Analysis |
|---|---|
| A method of processing data according to claim 17 and further comprising manipulating the pre-loaded values using a plurality of operations in the further constituent system associated with the applet, the operations comprising operations specific to the pre-loaded values and wherein the pre-loaded values are non-updateable. | The Accused Instrumentality meets this limitation.<br><br>The Accused Instrumentality has a capability that further comprises substantially all functionality required by the pre-loaded values. One or more of the executable applets included in the web page includes a data interface capability providing operations to alter the preloaded values to substantially all of their possible states.<br><br>The Accused Instrumentality has a further constituent system associated with the applet having a data interface capability configured as required by this claim element. The program code referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1) comprises attributes such as 'id' (Brooksrunning Exhibit 1: line #11), 'size' (Brooksrunning Exhibit 1: line #14), 'color' (Brooksrunning Exhibit 1: line #19), 'avStatus' (Brooksrunning Exhibit 1: line #25), etc. that provide data interface capability by allowing the client to access and use data such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). Furthermore, the program code is configured to provide a plurality of operations on the preloaded values because it allows the client device to read, write and/or modify the data referenced from line #7 - line 3253 Brooksrunning Source Code (Brooksrunning Exhibit 1). These pre-loaded values are non-updateable. |

| Claim 26 | Infringement Analysis |
|---|---|
| A method according to claim 17, wherein the pre-loaded values are non-updateable. | The Accused Instrumentality meets this limitation.<br><br>One or more of the executable applets includes pre-loaded values which are non-updateable.<br><br>One non-limiting example is the subset of data items such as '210030300.030', 'M', '300', 'NOT_AVAILABLE', etc. referenced from line #7 - line 3253 in Brooksrunning Source Code (Brooksrunning Exhibit 1). |

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

PARALLEL NETWORKS, LLC,

    Plaintiff,

    v.

ADIDAS AMERICA, INC.; ADIDAS
INTERACTIVE, INC.; AEROPOSTALE,
INC.; AMERICAN GIRL, LLC; AMERICAN
SUZUKI MOTOR CORPORATION;
ANDERSEN CORPORATION; ANDERSEN
WINDOWS, INC.; ASICS AMERICA
CORPORATION; AT&T INC.; BBY
SOLUTIONS, INC.;
BERGDORFGOODMAN.COM, LLC;
BESTBUY.COM, LLC;
BLOOMINGDALE'S, INC.; BRIGGS &
STRATTON CORPORATION; BRIGGS &
STRATTON POWER PRODUCTS GROUP,
LLC; BRUNSWICK BILLIARDS, INC.;
BRUNSWICK CORPORATION; CHICO'S
RETAIL SERVICES, INC.; CITIZEN
WATCH COMPANY OF AMERICA, INC.;
DILLARD'S, INC.; EASTMAN KODAK
COMPANY; GENERAL MOTORS LLC;
THE GILLETTE COMPANY; THE
GOODYEAR TIRE & RUBBER
COMPANY; H-D MICHIGAN, INC.;
HARLEY-DAVIDSON, INC.; HASBRO,
INC.; HAYNEEDLE, INC.; HERMAN
MILLER, INC.; HSN INTERACTIVE LLC;
HSN LP; THE J. JILL GROUP, INC.; JILL
ACQUISITION LLC; JONES
INVESTMENT COMPANY, INC.; JONES
RETAIL CORPORATION; KODAK
IMAGING NETWORK, INC.; KOHL'S
DEPARTMENT STORES, INC.; LG
ELECTRONICS USA, INC.; MACY'S
WEST STORES, INC.; MACYS.COM, INC.;
MATTEL, INC.; MITSUBISHI MOTOR
SALES OF AMERICA, INC.; MITSUBISHI
MOTORS NORTH AMERICA, INC.;
MOTOROLA, INC.; MOTOROLA

**Civil Action No. 6:10-cv-491**

**PATENT CASE**

**JURY TRIAL DEMANDED**

TRADEMARK HOLDINGS, LLC;
NAUTICA APPAREL, INC.; NAUTICA
RETAIL USA, INC.; NAVISTAR, INC.;
NEW BALANCE ATHLETIC SHOE, INC.;
NISSAN NORTH AMERICA, INC.; PRL
USA HOLDINGS, INC.; THE PROCTER &
GAMBLE COMPANY; RALPH LAUREN
MEDIA LLC; RUSSELL BRANDS, LLC;
SUBARU OF AMERICA, INC.; SUNGLASS
HUT TRADING, LLC; VICTORIA'S
SECRET; WOLVERINE WORLD WIDE,
INC.; and WOMEN'S APPAREL GROUP,
LLC d/b/a BOSTON APPAREL GROUP,
LLC

Defendants.

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Parallel Networks, LLC files this Original Complaint for Patent Infringement

against ADIDAS AMERICA, INC.; ADIDAS INTERACTIVE, INC.; AMERICAN GIRL, LLC;

AEROPOSTALE, INC.; AMERICAN SUZUKI MOTOR CORPORATION; ANDERSEN

CORPORATION; ANDERSEN WINDOWS, INC.; ASICS AMERICA CORPORATION;

AT&T INC.; BBY SOLUTIONS, INC.; BERGDORFGOODMAN.COM, LLC;

BESTBUY.COM, LLC; BLOOMINGDALE'S, INC.; BRIGGS & STRATTON

CORPORATION; BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC;

BRUNSWICK BILLIARDS, INC.; BRUNSWICK CORPORATION; CHICO'S RETAIL

SERVICES, INC.; CITIZEN WATCH COMPANY OF AMERICA, INC.; DILLARD'S, INC.;

EASTMAN KODAK COMPANY; GENERAL MOTORS LLC; THE GILLETTE COMPANY;

THE GOODYEAR TIRE & RUBBER COMPANY; H-D MICHIGAN, INC.; HARLEY-

DAVIDSON, INC.; HASBRO, INC.; HAYNEEDLE, INC.; HERMAN MILLER, INC.; HSN

INTERACTIVE LLC; HSN LP; THE J. JILL GROUP, INC.; JILL ACQUISITION LLC;

JONES INVESTMENT COMPANY, INC.; JONES RETAIL CORPORATION; KODAK IMAGING NETWORK, INC.; KOHL'S DEPARTMENT STORES, INC.; LG ELECTRONICS USA, INC.; MACY'S WEST STORES, INC.; MACYS.COM, INC.; MATTEL, INC.; MITSUBISHI MOTOR SALES OF AMERICA, INC.; MITSUBISHI MOTORS NORTH AMERICA, INC.; MOTOROLA, INC.; MOTOROLA TRADEMARK HOLDINGS, LLC; NAUTICA APPAREL, INC.; NAUTICA RETAIL USA, INC.; NAVISTAR, INC.; NEW BALANCE ATHLETIC SHOE, INC.; NISSAN NORTH AMERICA, INC.; PRL USA HOLDINGS, INC.; THE PROCTER & GAMBLE COMPANY; RALPH LAUREN MEDIA LLC; RUSSELL BRANDS, LLC; SUBARU OF AMERICA, INC.; SUNGLASS HUT TRADING, LLC; VICTORIA'S SECRET; WOLVERINE WORLD WIDE, INC.; and WOMEN'S APPAREL GROUP, LLC d/b/a BOSTON APPAREL GROUP, LLC (collectively "Defendants").

## **THE PARTIES**

1.      Parallel Networks LLC ("Parallel Networks" or "Plaintiff") is a Texas Limited Liability Company with its place of business at 100 E. Ferguson Street, Suite 602, in Tyler, Texas.

2.      On information and belief, Defendant ADIDAS AMERICA, INC., is a corporation with a place of business in Portland, Oregon.

3.      On information and belief, Defendant ADIDAS INTERACTIVE, INC., is a corporation with a place of business in Portland, Oregon.

4.      On information and belief, Defendant AEROPOSTALE, INC., is a corporation with a place of business in New York, New York.

3

5.  On information and belief, Defendant AMERICAN GIRL, LLC, is a corporation with a place of business in Middleton, Wisconsin.

6.  On information and belief, Defendant AMERICAN SUZUKI MOTOR CORPORATION is a corporation with a place of business in Brea, California.

7.  On information and belief, Defendant ANDERSEN CORPORATION is a corporation with a place of business in Bayport, Minnesota.

8.  On information and belief, Defendant ANDERSEN WINDOWS, INC., is a corporation with a place of business in Bayport, Minnesota.

9.  On information and belief, Defendant ASICS AMERICA CORPORATION is a corporation with a place of business in Irvine, California.

10.  On information and belief, Defendant AT&T INC., is a corporation with a place of business in Dallas, Texas.

11.  On information and belief, Defendant BBY SOLUTIONS, INC., is a corporation with a place of business in Richfield, Minnesota.

12.  On information and belief, Defendant BERGDORFGOODMAN.COM, LLC, is a corporation with a place of business in Dallas, Texas.

13.  On information and belief, Defendant BESTBUY.COM, LLC, is a corporation with a place of business in Richfield, Minnesota.

14.  On information and belief, Defendant BLOOMINGDALE'S, INC., is a corporation with a place of business in New York, New York.

15.  On information and belief, Defendant BRIGGS & STRATTON CORPORATION is a corporation with a place of business in Wauwatosa, Wisconsin.

16.     On information and belief, Defendant BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, is a corporation with a place of business in Jefferson, Wisconsin.

17.     On information and belief, Defendant BRUNSWICK BILLIARDS, INC., is a corporation with a place of business in Bristol, Wisconsin.

18.     On information and belief, Defendant BRUNSWICK CORPORATION is a corporation with a place of business in Lake Forest, Illinois.

19.     On information and belief, Defendant CATERPILLAR INC. is a corporation with a place of business in Peoria, Illinois.

20.     On information and belief, Defendant CHICO'S RETAIL SERVICES, INC., is a corporation with a place of business in Fort Myers, Florida.

21.     On information and belief, Defendant CITIZEN WATCH COMPANY OF AMERICA, INC., is a corporation with a place of business in Torrance, California.

22.     On information and belief, Defendant DILLARD'S, INC., is a corporation with a place of business in Little Rock, Arkansas.

23.     On information and belief, Defendant EASTMAN KODAK COMPANY is a corporation with a place of business in Rochester, New York.

24.     On information and belief, Defendant GENERAL MOTORS LLC is a corporation with a place of business in Detroit, Michigan.

25.     On information and belief, Defendant THE GILLETTE COMPANY is a corporation with a place of business in Boston, Massachusetts.

26.     On information and belief, Defendant THE GOODYEAR TIRE & RUBBER COMPANY is a corporation with a place of business in Akron, Ohio.

27.     On information and belief, Defendant H-D MICHIGAN, INC., is a corporation with a place of business in Ann Arbor, Michigan.

28.     On information and belief, Defendant HARLEY-DAVIDSON, INC., is a corporation with a place of business in Milwaukee, Wisconsin.

29.     On information and belief, Defendant HASBRO, INC., is a corporation with a place of business in Pawtucket, Rhode Island.

30.     On information and belief, Defendant HAYNEEDLE, INC., is a corporation with a place of business in Omaha, Nebraska.

31.     On information and belief, Defendant HERMAN MILLER, INC., is a corporation with a place of business in Zeeland, Michigan.

32.     On information and belief, Defendant HSN INTERACTIVE LLC is a corporation with a place of business in St. Petersburg, Florida.

33.     On information and belief, Defendant HSN LP is a corporation with a place of business in St. Petersburg, Florida.

34.     On information and belief, Defendant THE J. JILL GROUP, INC., is a corporation with a place of business in Tilton, New Hampshire.

35.     On information and belief, Defendant JILL ACQUISITION LLC is a corporation with a place of business in Tilton, New Hampshire.

36.     On information and belief, Defendant JONES INVESTMENT COMPANY, INC., is a corporation with a place of business in Wilmington, Delaware.

37.     On information and belief, Defendant JONES RETAIL CORPORATION is a corporation with a place of business in Bristol, Pennsylvania.

38.     On information and belief, Defendant KODAK IMAGING NETWORK, INC., is a corporation with a place of business in Emeryville, California.

39.     On information and belief, Defendant KOHL'S DEPARTMENT STORES, INC., is a corporation with a place of business in Menomonee Falls, Wisconsin.

40.     On information and belief, Defendant LG ELECTRONICS USA, INC., is a corporation with a place of business in Englewood Cliffs, New Jersey.

41.     On information and belief, Defendant MACY'S WEST STORES, INC., is a corporation with a place of business in Cincinnati, Ohio.

42.     On information and belief, Defendant MACYS.COM, INC., is a corporation with a place of business in San Francisco, California.

43.     On information and belief, Defendant MATTEL, INC., is a corporation with a place of business in El Segundo, California.

44.     On information and belief, Defendant MITSUBISHI MOTOR SALES OF AMERICA, INC., is a corporation with a place of business in Cypress, California.

45.     On information and belief, Defendant MITSUBISHI MOTORS NORTH AMERICA, INC., is a corporation with a place of business in Cypress, California.

46.     On information and belief, Defendant MOTOROLA, INC., is a corporation with a place of business in Schaumburg, Illinois.

47.     On information and belief, Defendant MOTOROLA TRADEMARK HOLDINGS, LLC, is a corporation with a place of business in Libertyville, Illinois.

48.     On information and belief, Defendant NAUTICA APPAREL, INC., is a corporation with a place of business in New York, New York.

49.     On information and belief, Defendant NAUTICA RETAIL USA, INC., is a corporation with a place of business in New York, New York.

50.     On information and belief, Defendant NAVISTAR, INC., is a corporation with a place of business in Warrenville, Illinois.

51.     On information and belief, Defendant NEW BALANCE ATHLETIC SHOE, INC., is a corporation with a place of business in Boston, Massachusetts.

52.     On information and belief, Defendant NISSAN NORTH AMERICA, INC., is a corporation with a place of business in Franklin, Tennessee.

53.     On information and belief, Defendant PRL USA HOLDINGS, INC., is a corporation with a place of business in Wilmington, Delaware.

54.     On information and belief, Defendant THE PROCTER & GAMBLE COMPANY is a corporation with a place of business in Cincinnati, Ohio.

55.     On information and belief, Defendant RALPH LAUREN MEDIA LLC is a corporation with a place of business in New York, New York.

56.     On information and belief, Defendant RUSSELL BRANDS, LLC, is a corporation with a place of business in Bowling Green, Kentucky.

57.     On information and belief, Defendant SUBARU OF AMERICA, INC., is a corporation with a place of business in Cherry Hill, New Jersey.

58.     On information and belief, Defendant SUNGLASS HUT TRADING, LLC, is a corporation with a place of business in Mason, Ohio.

59.     On information and belief, Defendant VICTORIA'S SECRET is a corporation with a place of business in Columbus, Ohio.

60.     On information and belief, Defendant WOLVERINE WORLD WIDE, INC., is a corporation with a place of business in Rockford, Michigan.

61.     On information and belief, Defendant WOMEN'S APPAREL GROUP, LLC d/b/a BOSTON APPAREL GROUP, LLC ("WOMEN'S APPAREL GROUP, LLC"), is a corporation with a place of business in West Bridgewater, Massachusetts.

## JURISDICTION AND VENUE

62.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  On information and belief, Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long Arm Statute, due at least to their substantial business in this forum, including at least a portion of the infringements alleged herein.  Without limitation, on information and belief, within this state the Defendants have made and used the patented invention and have induced and contributed to that infringement with the systems identified herein below.  In addition, on information and belief, Defendants have derived substantial revenues from their infringing acts.  Further, on information and belief, Defendants are subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas.  Further, on information and belief, Defendants are subject to the Court's personal jurisdiction at least due to their interactive websites accessible from Texas.

63.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).  On information and belief, from and within this Judicial District each Defendant has committed at least a portion of the infringements at issue in this case.  Without limitation, on information

and belief, within this district the Defendants have engaged in, contributed to, and induced the infringing acts identified in this Complaint. In addition, on information and belief, Defendants have derived substantial revenues from their infringing acts and are subject to personal jurisdiction in this District for at least the reasons identified above with respect to personal jurisdiction within the State of Texas. Further, on information and belief, Defendants are subject to the Court's personal jurisdiction in this District at least due to their interactive websites accessible from this District.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 6,446,111**

64.     United States Patent No. 6,446,111 ("the '111 patent") entitled "Method and Apparatus for Client-Server Communication Using a Limited Capability Client Over a Low-Speed Communications Link" issued on September 3, 2002.

65.     Parallel Networks is the assignee of all right, title and interest in the '111 patent. Accordingly, Parallel Networks has standing to bring this lawsuit for infringement of the '111 patent.

66.     At least one claim of the '111 patent covers, inter alia, various systems and methods comprising a server coupled to a communications link that receives a request from a client device and collects data items as a function of the request; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with the applet operable to be transferred over the communications link to the client device.

67.    On information and belief, Defendant ADIDAS AMERICA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.shopadidas.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

68.    On information and belief, since becoming aware of the '111 patent, ADIDAS AMERICA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.shopadidas.com for use by ADIDAS AMERICA, INC.'s clients.  ADIDAS AMERICA, INC. is a direct and indirect infringer, and its clients using www.shopadidas.com are direct infringers.

69.    On information and belief, since becoming aware of the '111 patent ADIDAS AMERICA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, ADIDAS AMERICA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, ADIDAS AMERICA, INC. is and has been committing the act of

11

contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

70.     Defendant ADIDAS AMERICA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

71.     On information and belief, Defendant ADIDAS INTERACTIVE, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.shopadidas.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

72.     On information and belief, since becoming aware of the '111 patent, ADIDAS INTERACTIVE, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.shopadidas.com for use by ADIDAS INTERACTIVE, INC.'s clients. ADIDAS INTERACTIVE, INC. is a direct and indirect infringer, and its clients using www.shopadidas.com are direct infringers.

12

73.    On information and belief, since becoming aware of the '111 patent ADIDAS INTERACTIVE, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, ADIDAS INTERACTIVE, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, ADIDAS INTERACTIVE, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

74.    Defendant ADIDAS INTERACTIVE, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

75.    On information and belief, Defendant AEROPOSTALE, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.aeropostale.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

76.     On information and belief, since becoming aware of the '111 patent, AEROPOSTALE, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.aeropostale.com for use by AEROPOSTALE, INC.'s clients.  AEROPOSTALE, INC. is a direct and indirect infringer, and its clients using www.aeropostale.com are direct infringers.

77.     On information and belief, since becoming aware of the '111 patent AEROPOSTALE, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, AEROPOSTALE, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, AEROPOSTALE, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

78.     Defendant AEROPOSTALE, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

79.     On information and belief, Defendant AMERICAN GIRL, LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.americangirl.com, which comprises a server coupled to a communications link that

receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

80.     On information and belief, since becoming aware of the '111 patent, AMERICAN GIRL, LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.americangirl.com for use by AMERICAN GIRL, LLC's clients.  AMERICAN GIRL, LLC is a direct and indirect infringer, and its clients using www.americangirl.com are direct infringers.

81.     On information and belief, since becoming aware of the '111 patent AMERICAN GIRL, LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, AMERICAN GIRL, LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, AMERICAN GIRL, LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

82.     Defendant AMERICAN GIRL, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

83.     On information and belief, Defendant AMERICAN SUZUKI MOTOR CORPORATION has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.suzukicycles.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

84.     On information and belief, since becoming aware of the '111 patent, AMERICAN SUZUKI MOTOR CORPORATION has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.suzukicycles.com for use by AMERICAN SUZUKI MOTOR CORPORATION's clients.  AMERICAN SUZUKI MOTOR CORPORATION is a direct and indirect infringer, and its clients using www.suzukicycles.com are direct infringers.

85.     On information and belief, since becoming aware of the '111 patent AMERICAN SUZUKI MOTOR CORPORATION is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, AMERICAN

SUZUKI MOTOR CORPORATION knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, AMERICAN SUZUKI MOTOR CORPORATION is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

86.    Defendant AMERICAN SUZUKI MOTOR CORPORATION is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

87.    On information and belief, Defendant ANDERSEN CORPORATION has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.andersenstormdoorsathomedepot.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

88.    On information and belief, since becoming aware of the '111 patent, ANDERSEN CORPORATION has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website

www.andersenstormdoorsathomedepot.com for use by ANDERSEN CORPORATION's clients. ANDERSEN CORPORATION is a direct and indirect infringer, and its clients using www.andersenstormdoorsathomedepot.com are direct infringers.

89. On information and belief, since becoming aware of the '111 patent ANDERSEN CORPORATION is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, ANDERSEN CORPORATION knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, ANDERSEN CORPORATION is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

90. Defendant ANDERSEN CORPORATION is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

91. On information and belief, Defendant ANDERSEN WINDOWS, INC., has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.andersenstormdoorsathomedepot.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to

provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

92. On information and belief, since becoming aware of the '111 patent, ANDERSEN WINDOWS, INC., has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.andersenstormdoorsathomedepot.com for use by ANDERSEN WINDOWS, INC.'s clients. ANDERSEN WINDOWS, INC., is a direct and indirect infringer, and its clients using www.andersenstormdoorsathomedepot.com are direct infringers.

93. On information and belief, since becoming aware of the '111 patent ANDERSEN WINDOWS, INC., is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, ANDERSEN WINDOWS, INC., knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, ANDERSEN WINDOWS, INC., is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

94. Defendant ANDERSEN WINDOWS, INC., is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

95. On information and belief, Defendant ASICS AMERICA CORPORATION has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial

district, and elsewhere in the United States, by actions comprising making and using its website at www.asicsamerica.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

96.     On information and belief, since becoming aware of the '111 patent, ASICS AMERICA CORPORATION has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.asicsamerica.com for use by ASICS AMERICA CORPORATION's clients. ASICS AMERICA CORPORATION is a direct and indirect infringer, and its clients using www.asicsamerica.com are direct infringers.

97.     On information and belief, since becoming aware of the '111 patent ASICS AMERICA CORPORATION is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.   On information and belief, ASICS AMERICA CORPORATION knew or should have known that through its acts it was and is inducing infringement of the '111 patent.   On information and belief, ASICS AMERICA CORPORATION is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention,

knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

98.     Defendant ASICS AMERICA CORPORATION is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

99.     On information and belief, Defendant AT&T INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.bellsouth.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

100.     On information and belief, since becoming aware of the '111 patent, AT&T INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.bellsouth.com for use by AT&T INC.'s clients.  AT&T INC. is a direct and indirect infringer, and its clients using www.bellsouth.com are direct infringers.

101.     On information and belief, since becoming aware of the '111 patent AT&T INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.

On information and belief, AT&T INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, AT&T INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

102. Defendant AT&T INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

103. On information and belief, Defendant BBY SOLUTIONS, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.bestbuy.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

104. On information and belief, since becoming aware of the '111 patent, BBY SOLUTIONS, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website

www.bestbuy.com for use by BBY SOLUTIONS, INC.'s clients. BBY SOLUTIONS, INC. is a direct and indirect infringer, and its clients using www.bestbuy.com are direct infringers.

105.    On information and belief, since becoming aware of the '111 patent BBY SOLUTIONS, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, BBY SOLUTIONS, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, BBY SOLUTIONS, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

106.    Defendant BBY SOLUTIONS, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

107.    On information and belief, Defendant BERGDORFGOODMAN.COM, LLC, has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.bergdorfgoodman.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of

operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

108. On information and belief, since becoming aware of the '111 patent, BERGDORFGOODMAN.COM, LLC, has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.bergdorfgoodman.com for use by BERGDORFGOODMAN.COM, LLC's clients. BERGDORFGOODMAN.COM, LLC, is a direct and indirect infringer, and its clients using www.bergdorfgoodman.com are direct infringers.

109. On information and belief, since becoming aware of the '111 patent BERGDORFGOODMAN.COM, LLC, is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, BERGDORFGOODMAN.COM, LLC, knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, BERGDORFGOODMAN.COM, LLC, is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

110. Defendant BERGDORFGOODMAN.COM, LLC, is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

111.    On information and belief, Defendant BESTBUY.COM, LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.bestbuy.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

112.    On information and belief, since becoming aware of the '111 patent, BESTBUY.COM, LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.bestbuy.com for use by BESTBUY.COM, LLC's clients.  BESTBUY.COM, LLC is a direct and indirect infringer, and its clients using www.bestbuy.com are direct infringers.

113.    On information and belief, since becoming aware of the '111 patent BESTBUY.COM, LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, BESTBUY.COM, LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, BESTBUY.COM, LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing

that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

114.     Defendant BESTBUY.COM, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

115.     On information and belief, Defendant BLOOMINGDALE'S, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.bloomingdales.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

116.     On information and belief, since becoming aware of the '111 patent, BLOOMINGDALE'S, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.bloomingdales.com for use by BLOOMINGDALE'S, INC.'s clients. BLOOMINGDALE'S, INC. is a direct and indirect infringer, and its clients using www.bloomingdales.com are direct infringers.

117.    On information and belief, since becoming aware of the '111 patent BLOOMINGDALE'S, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, BLOOMINGDALE'S, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, BLOOMINGDALE'S, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

118.    Defendant BLOOMINGDALE'S, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

119.    On information and belief, Defendant BRIGGS & STRATTON CORPORATION has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.homegeneratorsystems.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

120.     On information and belief, since becoming aware of the '111 patent, BRIGGS & STRATTON CORPORATION has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.homegeneratorsystems.com for use by BRIGGS & STRATTON CORPORATION's clients.  BRIGGS & STRATTON CORPORATION is a direct and indirect infringer, and its clients using www.homegeneratorsystems.com are direct infringers.

121.     On information and belief, since becoming aware of the '111 patent BRIGGS & STRATTON CORPORATION is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, BRIGGS & STRATTON CORPORATION knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, BRIGGS & STRATTON CORPORATION is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

122.     Defendant BRIGGS & STRATTON CORPORATION is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

123.     On information and belief, Defendant BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising

making and using its website at www.homegeneratorsystems.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

124.    On information and belief, since becoming aware of the '111 patent, BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.homegeneratorsystems.com for use by BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC's clients.  BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC is a direct and indirect infringer, and its clients using www.homegeneratorsystems.com are direct infringers.

125.    On information and belief, since becoming aware of the '111 patent BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC is and has been committing the act of contributory infringement by intending to provide the identified website to

its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

126.    Defendant BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

127.    On information and belief, Defendant BRUNSWICK BILLIARDS, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.brunswickbilliards.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

128.    On information and belief, since becoming aware of the '111 patent, BRUNSWICK BILLIARDS, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.brunswickbilliards.com for use by BRUNSWICK BILLIARDS, INC.'s clients. BRUNSWICK BILLIARDS, INC. is a direct and indirect infringer, and its clients using www.brunswickbilliards.com are direct infringers.

129.     On information and belief, since becoming aware of the '111 patent BRUNSWICK BILLIARDS, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, BRUNSWICK BILLIARDS, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.     On information and belief, BRUNSWICK BILLIARDS, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

130.     Defendant BRUNSWICK BILLIARDS, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

131.     On information and belief, Defendant BRUNSWICK CORPORATION has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.brunswickbilliards.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

132.    On information and belief, since becoming aware of the '111 patent, BRUNSWICK CORPORATION has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.brunswickbilliards.com for use by BRUNSWICK CORPORATION's clients. BRUNSWICK CORPORATION is a direct and indirect infringer, and its clients using www.brunswickbilliards.com are direct infringers.

133.    On information and belief, since becoming aware of the '111 patent BRUNSWICK CORPORATION is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, BRUNSWICK CORPORATION knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, BRUNSWICK CORPORATION is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

134.    Defendant BRUNSWICK CORPORATION is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

135.    On information and belief, Defendant CHICO'S RETAIL SERVICES, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.chicos.com, which comprises a server coupled to a communications link that receives a

request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

136. On information and belief, since becoming aware of the '111 patent, CHICO'S RETAIL SERVICES, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.chicos.com for use by CHICO'S RETAIL SERVICES, INC.'s clients. CHICO'S RETAIL SERVICES, INC. is a direct and indirect infringer, and its clients using www.chicos.com are direct infringers.

137. On information and belief, since becoming aware of the '111 patent CHICO'S RETAIL SERVICES, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, CHICO'S RETAIL SERVICES, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, CHICO'S RETAIL SERVICES, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

138.    Defendant CHICO'S RETAIL SERVICES, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

139.    On information and belief, Defendant CITIZEN WATCH COMPANY OF AMERICA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.citizenwatch.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

140.    On information and belief, since becoming aware of the '111 patent, CITIZEN WATCH COMPANY OF AMERICA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.citizenwatch.com for use by CITIZEN WATCH COMPANY OF AMERICA, INC.'s clients.  CITIZEN WATCH COMPANY OF AMERICA, INC. is a direct and indirect infringer, and its clients using www.citizenwatch.com are direct infringers.

141.    On information and belief, since becoming aware of the '111 patent CITIZEN WATCH COMPANY OF AMERICA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, CITIZEN WATCH

COMPANY OF AMERICA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, CITIZEN WATCH COMPANY OF AMERICA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

142.    Defendant CITIZEN WATCH COMPANY OF AMERICA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

143.    On information and belief, Defendant DILLARD'S, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.dillards.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

144.    On information and belief, since becoming aware of the '111 patent, DILLARD'S, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website

35

www.dillards.com for use by DILLARD'S, INC.'s clients. DILLARD'S, INC. is a direct and indirect infringer, and its clients using www.dillards.com are direct infringers.

145. On information and belief, since becoming aware of the '111 patent DILLARD'S, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, DILLARD'S, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, DILLARD'S, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

146. Defendant DILLARD'S, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

147. On information and belief, Defendant EASTMAN KODAK COMPANY has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.kodakgallery.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of

operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

148. On information and belief, since becoming aware of the '111 patent, EASTMAN KODAK COMPANY has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.kodakgallery.com for use by EASTMAN KODAK COMPANY's clients. EASTMAN KODAK COMPANY is a direct and indirect infringer, and its clients using www.kodakgallery.com are direct infringers.

149. On information and belief, since becoming aware of the '111 patent EASTMAN KODAK COMPANY is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, EASTMAN KODAK COMPANY knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, EASTMAN KODAK COMPANY is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

150. Defendant EASTMAN KODAK COMPANY is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

151. On information and belief, Defendant GENERAL MOTORS LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district,

37

and elsewhere in the United States, by actions comprising making and using its website at www.cadillac.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

152.    On information and belief, since becoming aware of the '111 patent, GENERAL MOTORS LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.cadillac.com for use by GENERAL MOTORS LLC's clients.  GENERAL MOTORS LLC is a direct and indirect infringer, and its clients using www.cadillac.com are direct infringers.

153.    On information and belief, since becoming aware of the '111 patent GENERAL MOTORS LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, GENERAL MOTORS LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, GENERAL MOTORS LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for

infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

154.    Defendant GENERAL MOTORS LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

155.    On information and belief, Defendant THE GILLETTE COMPANY has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.gillette.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

156.    On information and belief, since becoming aware of the '111 patent, THE GILLETTE COMPANY has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.gillette.com for use by THE GILLETTE COMPANY's clients.  THE GILLETTE COMPANY is a direct and indirect infringer, and its clients using www.gillette.com are direct infringers.

157.    On information and belief, since becoming aware of the '111 patent THE GILLETTE COMPANY is and has been committing the act of inducing infringement by

specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, THE GILLETTE COMPANY knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, THE GILLETTE COMPANY is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

158. Defendant THE GILLETTE COMPANY is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

159. On information and belief, Defendant THE GOODYEAR TIRE & RUBBER COMPANY has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.goodyearotr.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

160. On information and belief, since becoming aware of the '111 patent, THE GOODYEAR TIRE & RUBBER COMPANY has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111

patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.goodyearotr.com for use by THE GOODYEAR TIRE & RUBBER COMPANY's clients. THE GOODYEAR TIRE & RUBBER COMPANY is a direct and indirect infringer, and its clients using www.goodyearotr.com are direct infringers.

161. On information and belief, since becoming aware of the '111 patent THE GOODYEAR TIRE & RUBBER COMPANY is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, THE GOODYEAR TIRE & RUBBER COMPANY knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, THE GOODYEAR TIRE & RUBBER COMPANY is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

162. Defendant THE GOODYEAR TIRE & RUBBER COMPANY is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

163. On information and belief, Defendant H-D MICHIGAN, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.harley-davidson.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a

constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

164.    On information and belief, since becoming aware of the '111 patent, H-D MICHIGAN, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.harley-davidson.com for use by H-D MICHIGAN, INC.'s clients.  H-D MICHIGAN, INC. is a direct and indirect infringer, and its clients using www.harley-davidson.com are direct infringers.

165.    On information and belief, since becoming aware of the '111 patent H-D MICHIGAN, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, H-D MICHIGAN, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, H-D MICHIGAN, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

166.    Defendant H-D MICHIGAN, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

167.     On information and belief, Defendant HARLEY-DAVIDSON, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.harley-davidson.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

168.     On information and belief, since becoming aware of the '111 patent, HARLEY-DAVIDSON, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.harley-davidson.com for use by HARLEY-DAVIDSON, INC.'s clients.  HARLEY-DAVIDSON, INC. is a direct and indirect infringer, and its clients using www.harley-davidson.com are direct infringers.

169.     On information and belief, since becoming aware of the '111 patent HARLEY-DAVIDSON, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, HARLEY-DAVIDSON, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, HARLEY-DAVIDSON, INC. is and has been committing the act of

contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

170.    Defendant HARLEY-DAVIDSON, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

171.    On information and belief, Defendant HASBRO, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.hasbro.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

172.    On information and belief, since becoming aware of the '111 patent, HASBRO, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.hasbro.com for use by HASBRO, INC.'s clients.  HASBRO, INC. is a direct and indirect infringer, and its clients using www.hasbro.com are direct infringers.

173.    On information and belief, since becoming aware of the '111 patent HASBRO, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, HASBRO, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, HASBRO, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

174.    Defendant HASBRO, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

175.    On information and belief, Defendant HAYNEEDLE, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.bedsidetables.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

176.    On information and belief, since becoming aware of the '111 patent, HAYNEEDLE, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.bedsidetables.com for use by HAYNEEDLE, INC.'s clients.  HAYNEEDLE, INC. is a direct and indirect infringer, and its clients using www.bedsidetables.com are direct infringers.

177.    On information and belief, since becoming aware of the '111 patent HAYNEEDLE, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, HAYNEEDLE, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, HAYNEEDLE, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

178.    Defendant HAYNEEDLE, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

179.    On information and belief, Defendant HERMAN MILLER, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.hermanmiller.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an

46

executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

180.    On information and belief, since becoming aware of the '111 patent, HERMAN MILLER, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.hermanmiller.com for use by HERMAN MILLER, INC.'s clients.  HERMAN MILLER, INC. is a direct and indirect infringer, and its clients using www.hermanmiller.com are direct infringers.

181.    On information and belief, since becoming aware of the '111 patent HERMAN MILLER, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, HERMAN MILLER, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, HERMAN MILLER, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

182.    Defendant HERMAN MILLER, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

183.    On information and belief, Defendant HSN INTERACTIVE LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.hsn.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

184.    On information and belief, since becoming aware of the '111 patent, HSN INTERACTIVE LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.hsn.com for use by HSN INTERACTIVE LLC's clients.  HSN INTERACTIVE LLC is a direct and indirect infringer, and its clients using www.hsn.com are direct infringers.

185.    On information and belief, since becoming aware of the '111 patent HSN INTERACTIVE LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, HSN INTERACTIVE LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.

On information and belief, HSN INTERACTIVE LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

186.    Defendant HSN INTERACTIVE LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

187.    On information and belief, Defendant HSN LP has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.hsn.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

188.    On information and belief, since becoming aware of the '111 patent, HSN LP has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.hsn.com for use by HSN LP's clients. HSN LP is a direct and indirect infringer, and its clients using www.hsn.com are direct infringers.

189. On information and belief, since becoming aware of the '111 patent HSN LP is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, HSN LP knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, HSN LP is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

190. Defendant HSN LP is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

191. On information and belief, Defendant THE J. JILL GROUP, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.jjill.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

192. On information and belief, since becoming aware of the '111 patent, THE J. JILL GROUP, INC. has been and is now indirectly infringing by way of inducing infringement and

contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.jjill.com for use by THE J. JILL GROUP, INC.'s clients. THE J. JILL GROUP, INC. is a direct and indirect infringer, and its clients using www.jjill.com are direct infringers.

193. On information and belief, since becoming aware of the '111 patent THE J. JILL GROUP, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, THE J. JILL GROUP, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, THE J. JILL GROUP, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

194. Defendant THE J. JILL GROUP, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

195. On information and belief, Defendant JILL ACQUISITION LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.jjill.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system

comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

196. On information and belief, since becoming aware of the '111 patent, JILL ACQUISITION LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.jjill.com for use by JILL ACQUISITION LLC's clients. JILL ACQUISITION LLC is a direct and indirect infringer, and its clients using www.jjill.com are direct infringers.

197. On information and belief, since becoming aware of the '111 patent JILL ACQUISITION LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, JILL ACQUISITION LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, JILL ACQUISITION LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

198. Defendant JILL ACQUISITION LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

199. On information and belief, Defendant JONES INVESTMENT COMPANY, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this

judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.anneklein.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

200.    On information and belief, since becoming aware of the '111 patent, JONES INVESTMENT COMPANY, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.anneklein.com for use by JONES INVESTMENT COMPANY, INC.'s clients. JONES INVESTMENT COMPANY, INC. is a direct and indirect infringer, and its clients using www.anneklein.com are direct infringers.

201.    On information and belief, since becoming aware of the '111 patent JONES INVESTMENT COMPANY, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.   On information and belief, JONES INVESTMENT COMPANY, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.   On information and belief, JONES INVESTMENT COMPANY, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention,

knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

202.    Defendant JONES INVESTMENT COMPANY, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

203.    On information and belief, Defendant JONES RETAIL CORPORATION has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.anneklein.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

204.    On information and belief, since becoming aware of the '111 patent, JONES RETAIL CORPORATION has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.anneklein.com for use by JONES RETAIL CORPORATION's clients. JONES RETAIL CORPORATION is a direct and indirect infringer, and its clients using www.anneklein.com are direct infringers.

205.    On information and belief, since becoming aware of the '111 patent JONES RETAIL CORPORATION is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.    On information and belief, JONES RETAIL CORPORATION knew or should have known that through its acts it was and is inducing infringement of the '111 patent.    On information and belief, JONES RETAIL CORPORATION is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

206.    Defendant JONES RETAIL CORPORATION is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

207.    On information and belief, Defendant KODAK IMAGING NETWORK, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.kodakgallery.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

208.    On information and belief, since becoming aware of the '111 patent, KODAK IMAGING NETWORK, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.kodakgallery.com for use by KODAK IMAGING NETWORK, INC.'s clients. KODAK IMAGING NETWORK, INC. is a direct and indirect infringer, and its clients using www.kodakgallery.com are direct infringers.

209.    On information and belief, since becoming aware of the '111 patent KODAK IMAGING NETWORK, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, KODAK IMAGING NETWORK, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, KODAK IMAGING NETWORK, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

210.    Defendant KODAK IMAGING NETWORK, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

211.    On information and belief, Defendant KOHL'S DEPARTMENT STORES, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.kohls.com, which comprises a server coupled to a communications link that

receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

212.    On information and belief, since becoming aware of the '111 patent, KOHL'S DEPARTMENT STORES, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.kohls.com for use by KOHL'S DEPARTMENT STORES, INC.'s clients. KOHL'S DEPARTMENT STORES, INC. is a direct and indirect infringer, and its clients using www.kohls.com are direct infringers.

213.    On information and belief, since becoming aware of the '111 patent KOHL'S DEPARTMENT STORES, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.   On information and belief, KOHL'S DEPARTMENT STORES, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.   On information and belief, KOHL'S DEPARTMENT STORES, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further

knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

214.   Defendant KOHL'S DEPARTMENT STORES, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

215.   On information and belief, Defendant LG ELECTRONICS USA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.lg.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

216.   On information and belief, since becoming aware of the '111 patent, LG ELECTRONICS USA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.lg.com for use by LG ELECTRONICS USA, INC.'s clients.  LG ELECTRONICS USA, INC. is a direct and indirect infringer, and its clients using www.lg.com are direct infringers.

217.   On information and belief, since becoming aware of the '111 patent LG ELECTRONICS USA, INC. is and has been committing the act of inducing infringement by

specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, LG ELECTRONICS USA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, LG ELECTRONICS USA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

218.   Defendant LG ELECTRONICS USA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

219.   On information and belief, Defendant MACY'S WEST STORES, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.macys.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

220.   On information and belief, since becoming aware of the '111 patent, MACY'S WEST STORES, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the

State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.macys.com for use by MACY'S WEST STORES, INC.'s clients. MACY'S WEST STORES, INC. is a direct and indirect infringer, and its clients using www.macys.com are direct infringers.

221. On information and belief, since becoming aware of the '111 patent MACY'S WEST STORES, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, MACY'S WEST STORES, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, MACY'S WEST STORES, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

222. Defendant MACY'S WEST STORES, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

223. On information and belief, Defendant MACYS.COM, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.macys.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system

60

comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

224.    On information and belief, since becoming aware of the '111 patent, MACYS.COM, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.macys.com for use by MACYS.COM, INC.'s clients.  MACYS.COM, INC. is a direct and indirect infringer, and its clients using www.macys.com are direct infringers.

225.    On information and belief, since becoming aware of the '111 patent MACYS.COM, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, MACYS.COM, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, MACYS.COM, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

226.    Defendant MACYS.COM, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

227.    On information and belief, Defendant MATTEL, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and

elsewhere in the United States, by actions comprising making and using its website at www.americangirl.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

228.    On information and belief, since becoming aware of the '111 patent, MATTEL, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.americangirl.com for use by MATTEL, INC.'s clients.    MATTEL, INC. is a direct and indirect infringer, and its clients using www.americangirl.com are direct infringers.

229.    On information and belief, since becoming aware of the '111 patent MATTEL, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, MATTEL, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.    On information and belief, MATTEL, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further

knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

230. Defendant MATTEL, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

231. On information and belief, Defendant MITSUBISHI MOTOR SALES OF AMERICA, INC., has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.mitsubishicars.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

232. On information and belief, since becoming aware of the '111 patent, MITSUBISHI MOTOR SALES OF AMERICA, INC., has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.mitsubishicars.com for use by MITSUBISHI MOTOR SALES OF AMERICA, INC.'s clients. MITSUBISHI MOTOR SALES OF AMERICA, INC., is a direct and indirect infringer, and its clients using www.mitsubishicars.com are direct infringers.

233. On information and belief, since becoming aware of the '111 patent MITSUBISHI MOTOR SALES OF AMERICA, INC., is and has been committing the act of

inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, MITSUBISHI MOTOR SALES OF AMERICA, INC., knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, MITSUBISHI MOTOR SALES OF AMERICA, INC., is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

234. Defendant MITSUBISHI MOTOR SALES OF AMERICA, INC., is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

235. On information and belief, Defendant MITSUBISHI MOTORS NORTH AMERICA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.mitsubishicars.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

236. On information and belief, since becoming aware of the '111 patent, MITSUBISHI MOTORS NORTH AMERICA, INC. has been and is now indirectly infringing

by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.mitsubishicars.com for use by MITSUBISHI MOTORS NORTH AMERICA, INC.'s clients.  MITSUBISHI MOTORS NORTH AMERICA, INC. is a direct and indirect infringer, and its clients using www.mitsubishicars.com are direct infringers.

237.   On information and belief, since becoming aware of the '111 patent MITSUBISHI MOTORS NORTH AMERICA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, MITSUBISHI MOTORS NORTH AMERICA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, MITSUBISHI MOTORS NORTH AMERICA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

238.   Defendant MITSUBISHI MOTORS NORTH AMERICA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

239.   On information and belief, Defendant MOTOROLA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.motorola.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable

applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

240. On information and belief, since becoming aware of the '111 patent, MOTOROLA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.motorola.com for use by MOTOROLA, INC.'s clients. MOTOROLA, INC. is a direct and indirect infringer, and its clients using www.motorola.com are direct infringers.

241. On information and belief, since becoming aware of the '111 patent MOTOROLA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, MOTOROLA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, MOTOROLA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

242. Defendant MOTOROLA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

243.    On information and belief, Defendant MOTOROLA TRADEMARK HOLDINGS, LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.motorola.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

244.    On information and belief, since becoming aware of the '111 patent, MOTOROLA TRADEMARK HOLDINGS, LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.motorola.com for use by MOTOROLA TRADEMARK HOLDINGS, LLC's clients.  MOTOROLA TRADEMARK HOLDINGS, LLC is a direct and indirect infringer, and its clients using www.motorola.com are direct infringers.

245.    On information and belief, since becoming aware of the '111 patent MOTOROLA TRADEMARK HOLDINGS, LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, MOTOROLA TRADEMARK HOLDINGS, LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.    On information and belief, MOTOROLA

TRADEMARK HOLDINGS, LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

246.    Defendant MOTOROLA TRADEMARK HOLDINGS, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

247.    On information and belief, Defendant NAUTICA APPAREL, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.nautica.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

248.    On information and belief, since becoming aware of the '111 patent, NAUTICA APPAREL, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.nautica.com for use by NAUTICA APPAREL, INC.'s clients.  NAUTICA APPAREL, INC. is a direct and indirect infringer, and its clients using www.nautica.com are direct infringers.

249.    On information and belief, since becoming aware of the '111 patent NAUTICA APPAREL, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.   On information and belief, NAUTICA APPAREL, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.   On information and belief, NAUTICA APPAREL, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

250.    Defendant NAUTICA APPAREL, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

251.    On information and belief, Defendant NAUTICA RETAIL USA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.nautica.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

252.     On information and belief, since becoming aware of the '111 patent, NAUTICA RETAIL USA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.nautica.com for use by NAUTICA RETAIL USA, INC.'s clients.  NAUTICA RETAIL USA, INC. is a direct and indirect infringer, and its clients using www.nautica.com are direct infringers.

253.     On information and belief, since becoming aware of the '111 patent NAUTICA RETAIL USA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, NAUTICA RETAIL USA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, NAUTICA RETAIL USA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

254.     Defendant NAUTICA RETAIL USA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

255.     On information and belief, Defendant NAVISTAR, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.internationaltrucks.com, which comprises a server coupled to a communications link that

70

receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

256.     On information and belief, since becoming aware of the '111 patent, NAVISTAR, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.internationaltrucks.com for use by NAVISTAR, INC.'s clients.  NAVISTAR, INC. is a direct and indirect infringer, and its clients using www.internationaltrucks.com are direct infringers.

257.     On information and belief, since becoming aware of the '111 patent NAVISTAR, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, NAVISTAR, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, NAVISTAR, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

258.     Defendant NAVISTAR, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

259.     On information and belief, Defendant NEW BALANCE ATHLETIC SHOE, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.newbalance.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

260.     On information and belief, since becoming aware of the '111 patent, NEW BALANCE ATHLETIC SHOE, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.newbalance.com for use by NEW BALANCE ATHLETIC SHOE, INC.'s clients. NEW BALANCE ATHLETIC SHOE, INC. is a direct and indirect infringer, and its clients using www.newbalance.com are direct infringers.

261.     On information and belief, since becoming aware of the '111 patent NEW BALANCE ATHLETIC SHOE, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, NEW BALANCE

ATHLETIC SHOE, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, NEW BALANCE ATHLETIC SHOE, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

262. Defendant NEW BALANCE ATHLETIC SHOE, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

263. On information and belief, Defendant NISSAN NORTH AMERICA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.nissanusa.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

264. On information and belief, since becoming aware of the '111 patent, NISSAN NORTH AMERICA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the

website www.nissanusa.com for use by NISSAN NORTH AMERICA, INC.'s clients.  NISSAN NORTH AMERICA, INC. is a direct and indirect infringer, and its clients using www.nissanusa.com are direct infringers.

265.     On information and belief, since becoming aware of the '111 patent NISSAN NORTH AMERICA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, NISSAN NORTH AMERICA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, NISSAN NORTH AMERICA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

266.     Defendant NISSAN NORTH AMERICA, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

267.     On information and belief, Defendant PRL USA HOLDINGS, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.ralphlauren.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated

with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

268.     On information and belief, since becoming aware of the '111 patent, PRL USA HOLDINGS, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.ralphlauren.com for use by PRL USA HOLDINGS, INC.'s clients.     PRL USA HOLDINGS, INC. is a direct and indirect infringer, and its clients using www.ralphlauren.com are direct infringers.

269.     On information and belief, since becoming aware of the '111 patent PRL USA HOLDINGS, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.     On information and belief, PRL USA HOLDINGS, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.     On information and belief, PRL USA HOLDINGS, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

270.     Defendant PRL USA HOLDINGS, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

271.     On information and belief, Defendant THE PROCTER & GAMBLE COMPANY has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this

judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.gillette.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

272.    On information and belief, since becoming aware of the '111 patent, THE PROCTER & GAMBLE COMPANY has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.gillette.com for use by THE PROCTER & GAMBLE COMPANY's clients. THE PROCTER & GAMBLE COMPANY is a direct and indirect infringer, and its clients using www.gillette.com are direct infringers.

273.    On information and belief, since becoming aware of the '111 patent THE PROCTER & GAMBLE COMPANY is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, THE PROCTER & GAMBLE COMPANY knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, THE PROCTER & GAMBLE COMPANY is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention,

76

knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

274.     Defendant THE PROCTER & GAMBLE COMPANY is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

275.     On information and belief, Defendant RALPH LAUREN MEDIA LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.ralphlauren.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

276.     On information and belief, since becoming aware of the '111 patent, RALPH LAUREN MEDIA LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.ralphlauren.com for use by RALPH LAUREN MEDIA LLC's clients.  RALPH LAUREN MEDIA LLC is a direct and indirect infringer, and its clients using www.ralphlauren.com are direct infringers.

277.    On information and belief, since becoming aware of the '111 patent RALPH LAUREN MEDIA LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, RALPH LAUREN MEDIA LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, RALPH LAUREN MEDIA LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

278.    Defendant RALPH LAUREN MEDIA LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

279.    On information and belief, Defendant RUSSELL BRANDS, LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.russellathletic.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

280.     On information and belief, since becoming aware of the '111 patent, RUSSELL BRANDS, LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.russellathletic.com for use by RUSSELL BRANDS, LLC's clients.  RUSSELL BRANDS, LLC is a direct and indirect infringer, and its clients using www.russellathletic.com are direct infringers.

281.     On information and belief, since becoming aware of the '111 patent RUSSELL BRANDS, LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, RUSSELL BRANDS, LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.   On information and belief, RUSSELL BRANDS, LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

282.     Defendant RUSSELL BRANDS, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

283.     On information and belief, Defendant SUBARU OF AMERICA, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.subaru.com, which comprises a server coupled to a communications link that receives a

request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

284.    On information and belief, since becoming aware of the '111 patent, SUBARU OF AMERICA, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.subaru.com for use by SUBARU OF AMERICA, INC.'s clients. SUBARU OF AMERICA, INC. is a direct and indirect infringer, and its clients using www.subaru.com are direct infringers.

285.    On information and belief, since becoming aware of the '111 patent SUBARU OF AMERICA, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use. On information and belief, SUBARU OF AMERICA, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, SUBARU OF AMERICA, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

286.     Defendant SUBARU OF AMERICA, INC. is thus liable for infringement of the
'111 patent pursuant to 35 U.S.C. § 271.

287.     On information and belief, Defendant SUNGLASS HUT TRADING, LLC has
been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial
district, and elsewhere in the United States, by actions comprising making and using its website
at www.sunglasshut.com, which comprises a server coupled to a communications link that
receives a request from a client device and collects data items as a function of the requests; an
executable applet dynamically generated by the server in response to the client request; a
constituent system associated with the applet comprising a subset of the data items and a further
constituent system comprising a data interface capability configured to provide a plurality of
operations associated with the subset of data items; with such applet operable to be transferred
over the communications link to the client device.

288.     On information and belief, since becoming aware of the '111 patent, SUNGLASS
HUT TRADING, LLC has been and is now indirectly infringing by way of inducing
infringement and contributing to the infringement of at least claim 1 of the '111 patent in the
State of Texas, in this judicial district, and elsewhere in the United States, by providing the
website www.sunglasshut.com for use by SUNGLASS HUT TRADING, LLC's clients.
SUNGLASS HUT TRADING, LLC is a direct and indirect infringer, and its clients using
www.sunglasshut.com are direct infringers.

289.     On information and belief, since becoming aware of the '111 patent SUNGLASS
HUT TRADING, LLC is and has been committing the act of inducing infringement by
specifically intending to induce infringement by providing the identified website to its clients
and by aiding and abetting its use.  On information and belief, SUNGLASS HUT TRADING,

LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, SUNGLASS HUT TRADING, LLC is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

290. Defendant SUNGLASS HUT TRADING, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

291. On information and belief, Defendant VICTORIA'S SECRET has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.victoriassecret.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

292. On information and belief, since becoming aware of the '111 patent, VICTORIA'S SECRET has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.victoriassecret.com for use by VICTORIA'S SECRET's clients. VICTORIA'S

SECRET is a direct and indirect infringer, and its clients using www.victoriassecret.com are direct infringers.

293.    On information and belief, since becoming aware of the '111 patent VICTORIA'S SECRET is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, VICTORIA'S SECRET knew or should have known that through its acts it was and is inducing infringement of the '111 patent. On information and belief, VICTORIA'S SECRET is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

294.    Defendant VICTORIA'S SECRET is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

295.    On information and belief, Defendant WOLVERINE WORLD WIDE, INC. has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its website at www.catfootwear.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of

operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

296.     On information and belief, since becoming aware of the '111 patent, WOLVERINE WORLD WIDE, INC. has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the website www.catfootwear.com for use by WOLVERINE WORLD WIDE, INC.'s clients. WOLVERINE WORLD WIDE, INC. is a direct and indirect infringer, and its clients using www.catfootwear.com are direct infringers.

297.     On information and belief, since becoming aware of the '111 patent WOLVERINE WORLD WIDE, INC. is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified website to its clients and by aiding and abetting its use.  On information and belief, WOLVERINE WORLD WIDE, INC. knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, WOLVERINE WORLD WIDE, INC. is and has been committing the act of contributory infringement by intending to provide the identified website to its clients knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the system is not a staple article or commodity of commerce suitable for substantially noninfringing use.

298.     Defendant WOLVERINE WORLD WIDE, INC. is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

299.    On information and belief, Defendant WOMEN'S APPAREL GROUP, LLC has been and now is infringing at least claim 1 the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by actions comprising making and using its websites at www.metrostyle.com and www.chadwicks.com, which comprises a server coupled to a communications link that receives a request from a client device and collects data items as a function of the requests; an executable applet dynamically generated by the server in response to the client request; a constituent system associated with the applet comprising a subset of the data items and a further constituent system comprising a data interface capability configured to provide a plurality of operations associated with the subset of data items; with such applet operable to be transferred over the communications link to the client device.

300.    On information and belief, since becoming aware of the '111 patent, WOMEN'S APPAREL GROUP, LLC has been and is now indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '111 patent in the State of Texas, in this judicial district, and elsewhere in the United States, by providing the websites www.metrostyle.com and www.chadwicks.com  for use by WOMEN'S APPAREL GROUP, LLC's clients.  WOMEN'S APPAREL GROUP, LLC is a direct and indirect infringer, and its clients using www.metrostyle.com or www.chadwicks.com  are direct infringers.

301.    On information and belief, since becoming aware of the '111 patent WOMEN'S APPAREL GROUP, LLC is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the identified websites to its clients and by aiding and abetting its use.  On information and belief, WOMEN'S APPAREL GROUP, LLC knew or should have known that through its acts it was and is inducing infringement of the '111 patent.  On information and belief, WOMEN'S APPAREL GROUP, LLC is and has been

committing the act of contributory infringement by intending to provide the identified websites to its clients knowing that they are a material part of the invention, knowing that its use was made and adapted for infringement of the '111 patent, and further knowing that the systems are not a staple article or commodity of commerce suitable for substantially noninfringing use.

302.    Defendant WOMEN'S APPAREL GROUP, LLC is thus liable for infringement of the '111 patent pursuant to 35 U.S.C. § 271.

303.    As a result of Defendants' infringing conduct, Defendants should be held liable to Parallel Networks in an amount that adequately compensates Parallel Networks for their infringement, which, by law, can be no less than a reasonable royalty.

304.    On information and belief, Defendants have had at least constructive notice of the '111 patent by operation of law, and there are no marking requirements that have not been complied with.

**COUNT II**
**WILLFUL INFRINGEMENT**

305.    On information and belief, prior to the filing of the complaint, Defendants' infringement was willful and continues to be willful.  On information and belief, prior to the filing of this Complaint, Defendants were aware of the '111 patent and knew or should have known that Defendants were infringing at least claim 1 of the '111 patent.  On information and belief, Defendants in their infringing activities acted as they did despite an objectively high likelihood that their actions constituted infringement of a valid patent.  The Defendants' infringing activities were intentional and willful in that the risk of infringement was known to Defendants or was so obvious that it should have been known to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Parallel Networks respectfully requests that this Court enter:

a) A judgment in favor of Parallel Networks that Defendants have infringed, directly, jointly, and indirectly, by way of inducing and contributing to the infringement of the '111 patent;

b) A judgment that the Defendants' infringement is and has been willful and objectively reckless;

c) A permanent injunction enjoining Defendants, and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '111 patent;

d) A judgment and order requiring Defendants to pay Parallel Networks its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '111 patent as provided under 35 U.S.C. § 284;

e) An award to Parallel Networks for enhanced damages as provided under 35 U.S.C. § 284;

f) A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Parallel Networks its reasonable attorneys' fees; and

g) Any and all other relief to which Parallel Networks may show itself to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  September 23, 2010

Respectfully submitted,

By:  */s/ Craig Tadlock*
     Craig Tadlock
     State Bar No. 00791766
     Tadlock Law Firm PLLC
     400 E. Royal Lane, Suite 290
     Irving, Texas 75039
     Telephone: (214) 785-6014
      and
     315 N. Broadway, Suite 307
     Tyler, Texas 75702
     Telephone: (903) 283-2758
     Email: craig@tadlocklawfirm.com

     ***Attorney for Plaintiff Parallel***
     ***Networks, LLC***

<u>Of Counsel</u>:
George S. Bosy
David R. Bennett
Bosy & Bennett
3712 N. Broadway
P.O. Box 659
Chicago, IL 60613
Telephone: (773) 281-3826
Email:  gbosy@bosybennett.com
      dbennett@bosybennett.com

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| PARALLEL NETWORKS, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CIVIL ACTION NO. 6:10-cv-00111-LED** |
| § | |
| § | **CONSOLIDATED LEAD CASE** |
| ABERCROMBIE & FITCH, *et al.,* § | |
| § | |
| Defendants. § | |
| § | |
| § | |
| § | |
| PARALLEL NETWORKS, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 6:10-CV-00275-LED |
| § | |
| § | |
| AEO, INC., *et al.,* § | |
| § | |
| Defendants. § | |
| § | |
| § | |
| § | |
| PARALLEL NETWORKS, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 6:10-CV-00112-LED |
| § | |
| § | |
| BENTLEY MOTORS, *et al.,* § | |
| § | |
| Defendants. § | |
| § | |
| § | |
| § | |
| § | |
| PARALLEL NETWORKS, LLC, § | |

1

|                                | §  |                                        |
|--------------------------------|----|----------------------------------------|
| Plaintiff,                     | §  |                                        |
|                                | §  |                                        |
| v.                             | §  | CIVIL ACTION NO. 6:10-cv-00491-LED     |
|                                | §  |                                        |
|                                | §  |                                        |
| ADIDAS AMERICA, INC., *et al.*,| §  |                                        |
|                                | §  |                                        |
| Defendants.                    | §  |                                        |
|                                | §  |                                        |
|                                | §  |                                        |
|                                | §  |                                        |
| PARALLEL NETWORKS, LLC,        | §  |                                        |
|                                | §  |                                        |
| Plaintiff,                     | §  |                                        |
|                                | §  | CIVIL ACTION NO. 6:10-cv-00474-LED     |
| v.                             | §  |                                        |
|                                | §  |                                        |
|                                | §  |                                        |
| ORIENTAL TRADING., *et al.*,   | §  |                                        |
|                                | §  |                                        |
| Defendants.                    | §  |                                        |

### DEFENDANT RUSSELL BRANDS, LLC
### ANSWER AND COUNTERCLAIMS

COMES NOW Defendant Russell Brands, LLC ("Russell"), by and through its undersigned attorneys, and hereby answers Plaintiff's Complaint[1] ("Complaint") as follows:

### Response to "The Parties"

1.     Russell lacks knowledge or information sufficient to form a belief as to the truth or falsity of the information set forth in paragraph 1 of the Complaint.

2.     Russell lacks knowledge or information sufficient to form a belief as to the truth or falsity of the information set forth in paragraph 2 of the Complaint.

---

[1]     Parallel Networks' Complaint was filed in 6:10-cv-00491-LED, which has been since consolidated as captioned above.

20.     Plaintiff's claims, separately and severally, are barred, in whole or in part, by the doctrines of abatement, res judicata, collateral estoppel, or judicial estoppel, separately and severally.

21.     Plaintiff has failed to join all indispensable parties.

22.     There is no basis for Plaintiff to attempt to impose liability on Russell based on the actions of Brooks Sports, Inc. or any other entity or person.

23.     Plaintiff's claims, and any recovery thereof, are barred because Plaintiff has not suffered any compensable detriment, injury or damage.

24.     If Plaintiff has suffered any detriment, injury or damage, Plaintiff has failed to mitigate such damages.

25.     Any damages are limited by 35 U.S.C. § 286.

26.     With respect to Plaintiff's demand for injunctive relief, Russell pleads the defense of delay.

27.     Russell denies that Plaintiff is entitled to damages of the nature, type, or amount sought in Plaintiff's Complaint.  Russell has not engaged in any conduct that entitles Plaintiff to attorneys' fees or costs.

28.     Except as expressly admitted herein, Russell denies all allegations contained in Plaintiff's Complaint.

29.     Russell reserves the right to amend its answer to assert additional affirmative or supplemental defenses after completion of further investigation and discovery herein.

30.     Russell hereby adopts and incorporates herein any and all affirmative defenses pleaded by other named Defendants.

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 28th day of March, 2011, the foregoing document was filed electronically with the Clerk of Court via the CM/ECF system in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

*/s/ Joel M. Kuehnert*
OF COUNSEL